# CHARLESTON

## Sams v. Barnes.

Submitted March 4, 1914. Decided May 19, 1914.

Contracts—*Fraudulent Representations—Defense to Contract.*

> The principle of point 7 of the syllabus in *Tolley* v. *Poteet,* 62 W. Va. 231, relating to fraud in the procurement of a contract, reaffirmed and applied to the facts in this case, reversing the judgment below.

(Lynch, Judge, absent.)

Error to Circuit Court, Lewis County.

Action by Charles J. Sams against Thomas E. Barnes. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial granted.*

W. G. Bennett and J. M. Foster, for plaintiff in error.

J. E. Law and Brannon & Stathers, for defendant in error.

Miller, President:

In assumpsit, to recover the price of two hundred and fifty shares of Mary Mining Company stock, par value one dollar per share, plaintiff recovered a judgment upon the verdict of the jury for six hundred and seventy-eight dollars and two cents with interest and costs.

Defendant now seeks reversal of that judgment upon grounds pleaded and relied on in defense, and for alleged errors committed on the trial.

Besides non-assumpsit, defendant pleaded and relied on alleged false and fraudulent representations by plaintiff in the procurement of the contract, discovered by defendant afterwards, but before presentation and payment of his check for three hundred dollars given in part payment, and on account of which he stopped payment, and declined to accept the stock or complete the contract.

These alleged false and fraudulent representations related to the quantity of gold ore of rich quality represented to be in the ore house of the Mining Company on the premises; the daily output of ore and its value; the ore mill on the premises and the amount of ore treated and handled daily; the daily income of the Mining Company therefrom; the fact that the company had purchased a second mill, which would double the output and swell the income accordingly; that there was no stock for sale at any price, but plaintiff thought he could get defendant some at two dollars and fifty cents per share, all of which representations it is alleged were untrue, and that plaintiff knew them to be false at the time, but of which defendant was ignorant.

The evidence is conflicting as to whether said representations, except the last, were made as alleged, and as to whether those made were not simply that plaintiff had been so told or informed by literature or prospectuses furnished him, or given as his opinion, or were stated by him as facts so as to mislead and deceive defendant, and defraud him out of his money.

Plaintiff also relied on evidence tending to show defendant had investigated for himself, and did not rely on representations made by plaintiff. The evidence on this subject seems to be that defendant's investigations were limited to inquiries of one or two persons to whom plaintiff had referred him, one of whom was interested in the sale of the stock to defendant, indeed he was the one from whom plaintiff claims to have purchased the stock. Defendant had not received answers to letters written to other persons, particularly the president of the company, until after he had contracted with plaintiff, and

these did not, as he proved, verify the alleged representations of plaintiff.

Defendant also shows by his evidence, that after making said contract, and after receiving information of the president of the company, and making inquiries of persons, other than those to whom he had been referred by plaintiff, who knew the facts, he found those made by plaintiff and his friends were false.

As to the last of said representations, however, namely, that there was no stock for sale at any price, but plaintiff thought he could get defendant some at two dollars and fifty cents per share, we find no real conflict, and we deem this one most material. Defendant relies also on the fact of plaintiff's agency to acquire the stock, and that in any event, he would not be allowed to recover in excess of the price paid by him for this stock, as proved, seventy-five cents per share, and not two dollars and fifty cents per share, or two and a half times its par value.

Plaintiff, a wholesale grocer's salesman, admits that on the occasion of one or more of his regular calls on defendant, a retail grocer, and in talking casually with him about this Mining Company and the stock he held in it, and his judgment of the value of the stock, that he told him he would not take two dollars and fifty cents per share for his stock, and that he knew of no stock for sale; that on these occasions he painted a very rosy picture of the value of the stock and of the prospects of the Mining Company, based, of course, on what he claims to have heard. He admits, however, that on the occasion of his visit immediately before his alleged sale to defendant, that he told him he had struck a fellow he could buy some stock of and said to defendant, "I can tell you where you can get 250 shares of Mary Mining Company stock", and that defendant said, "You give me what information you can give that will be of benefit to me." At another place in attempting to repeat what he told defendant he says: "And later on I struck a fellow I could get some off of, and the next time I seen him I told him I could get him 250 shares of the mining stock at $2.50 share", and that defendant replied, "let me have a little time to consider the matter."

Defendant swears that plaintiff's representations of the

conditions and prospects above set forth were positive, and not on information, nor as matters of opinion; and as to the one material fact specially relied on in defense defendant says, among other things, that plaintiff represented to him that he believed he could get him some of that stock at two dollars and fifty cents per share; that he replied, that he thought that was an awful price to pay; that plaintiff replied that it was worth it.

Nowhere does plaintiff pretend that he represented to defendant that he was dealing in this stock, or was proposing to buy and sell this stock to defendant at a large profit; his evidence was that he had found a man from whom he could get two hundred and fifty shares for defendant at two dollars and fifty cents per share. Defendant swears plaintiff was proposing to get this stock for him as a friend from a man he had found that would sell at that price, and plaintiff's evidence and his admissions all go to show such was the impression he intended to make upon defendant's mind. Defendant could have gotten no other impression from his admitted statements.

The fact was, however, that other stock had been sold in the same market or locality at from twenty-five to fifty cents per share. And plaintiff admits that he paid but seventy-five cents per share for the stock he undertook to unload on defendant, when the highest price proven to have been paid by anybody before that was sixty cents per share.

We have detailed this much of the evidence upon this important fact because of the want of material conflict therein, and because in our opinion it is decisive of the question of fraud, controlling our decision of the case. Moreover, it is questionable whether the position of plaintiff was not that of agent for defendant in the purchase of the stock. But the fact that he falsely represented to defendant that he had struck a man from whom he could get two hundred and fifty shares at two dollars and fifty cents a share, when the fact was that he could and afterwards did buy them, according to his own admissions, at seventy-five cents per share, is sufficient in our opinion to vitiate the whole contract, voiding it, and that plaintiff is not entitled to recover from the defend-

ant anything on account of the contract. This conclusion renders it unnecessary to consider the other defenses depending to some extent on conflicting evidence.

Our conclusion, therefore, is that defendant's motion to set aside the verdict and award him a new trial should have prevailed upon the ground of fraud in the procurement of the contract, conclusively proven. Our decisions say: ''Fraud in the procurement of a contract avoids it; and where a party intentionally or by design misrepresents a material fact or produces a false impression, in order to mislead another or to entrap or cheat him or to obtain an undue advantage over him, in every such case there is positive fraud in the truest sense of the term—there is an evil act with an evil intent; and the misrepresentation may be as well by deeds and acts as by words, by artifices to mislead as by positive assertions.'' *Tolley* v. *Poteet*, 62 W. Va. 231.

This conclusion will reverse the judgment. But as there may be another trial, it becomes necessary for us to pass briefly upon other points of error raised. Of these the first is the giving of plaintiff's instructions numbered 1, 2, 3, and 3a. Number 1 relates to failure of consideration. It is not claimed  that this instruction does not state a correct legal proposition, but that it ignores the defense of fraud in the procurement of the contract. But, as it is not a  binding instruction, and as there was some evidence tending to show the stock worthless, this instruction may not have been wholly inapplicable, although defendant would have gotten the shares contracted for.

Instruction number 2, we think, propounds correctly the law that false representation should relate to material  facts and not trifling matters, and not mere matters of opinion, and must have been relied upon by the party claiming to have been injured. Nothing is said in argument against the correctness of this instruction, except in a general way.

Of instruction number 3, relating to the subject of investigations of the facts by defendant, and his non-reliance on the alleged false representation by plaintiff, we think it correctly states the law in the abstract. The only criticism of it by defendant's counsel is that it ignores the theory of the de-

fendant that the only inquiry made by him was of one Barnett, and that Barnett was interested in the sale by plaintiff to defendant, and that Barnett also misled him.    As this instruction is not a  binding one, and is based on plaintiff's theory of what the evidence proved. we do not see that there was error in giving it.

Instruction 3a is on the question of fraud, and  the necessity that one charging fraud should establish it by clear proof. We think it correctly states the legal proposition.

The next complaint is that the court refused to give defendant's instructions numbered 3, 4, and 5.    These instructions seem to be supported by the authorities cited, and if not covered by defendant's instructions numbered 1 and 2 which were presumably given, they ought to have been given to the jury.    But we would not reverse the judgment because of the refusal of these instructions, it not appearing from the record that instructions numbered 1 and 2 given did not fully cover the same subject.    We have recently reaffirmed the proposition that a judgment will not be reversed because of the failure of the court to give instructions when those given are not brought up with the record so that we can see clearly that good instructions refused were not covered by those given.    *Teter* v. *Franklin Fire Ins. Co.,* 74 W. Va. 344, 82 S. E. 40.

For these reasons we reverse the judgment and award defendant a new trial.

*Reversed, and new trial granted*