# LESLIE CORNELL v. UPPER MICHIGAN LAND COMPANY.[1]

December 10, 1915.

Nos. 19,556—(195).

**Injunction.**

1. The rule that, when the equities of the complaint are fully and positively denied under oath by the answer, a temporary injunction should not be granted, is not an inflexible one, and does not apply where it appears probable that the material allegations of the complaint will on a final hearing turn out to be true. The trial court rightly refused in this case to apply the rule stated.

**Same — rescission of contract for fraud — evidence of ratification.**

2. It does not appear conclusively from the pleadings, or the evidence presented on the hearing of the motion for a temporary injunction in this case, that plaintiff and his assignors had, by their conduct after discovering the fraud relied on, ratified the contracts sought to be rescinded in this action, or precluded themselves from obtaining the relief asked.

**Same.**

3. Plaintiff seeks to have rescinded for fraud his own contract for the purchase of land, and also three other contracts assigned to him by other vendees. By assuming in the assignments the obligations of the other vendees under the contract or on the notes given for deferred payments, plaintiff, though having knowledge of the fraud, did not preclude himself from claiming the right to have such contracts rescinded, or the transfer of the notes enjoined.

**Vendor and vendee — assignment of contract.**

4. The assignments to plaintiff by the other vendees do not purport to assign the bare right to sue in equity for a rescission, and are not void as against public policy. Such assignments were valid, though construed to include the right to sue in equity for a rescission.

**Same.**

5. An assignment by a vendee of a contract for the purchase of real estate and of all of his rights thereunder, includes the rights of the vendee to all remedies, legal or equitable, that he may have against the vendor, and, among others, the right to have the contracts rescinded for fraud.

[1] Reported in 155 N. W. 99.

---

Note.—As to waiver of vendee's right to rescind land contract, see note in 30 L.R.A.(N.S.) 872.

**Injunction restraining transfer of promissory notes.**

> 6. Under the circumstances of this case, it is not ground for reversing the order granting a temporary injunction restraining defendant from transferring the notes given for deferred payments, that a past due note was included in the operation of the injunction.

Action in the district court for Ramsey county to cancel certain land contracts and the promissory notes described therein and to recover $24,-343.33. Plaintiff obtained an order requiring defendant to show cause why a temporary injunction restraining defendant from disposing of the promissory notes described in the complaint should not be granted *pendente lite.* The application was heard before Dickson, J., who granted the application upon filing a statutory bond for $5,000. From the order granting the temporary injunction, defendant land company appealed. Affirmed.

*B. H. Schriber,* for appellant.

*O'Brien, Young & Stone,* for respondent.

BUNN, J.

The trial court granted a temporary injunction restraining defendant land company during the pendency of the action from negotiating or transferring 20 promissory notes of the face value of $35,000 executed by plaintiff to it, and 62 promissory notes of the aggregate face value of $204,000, severally executed to it by six other men, whose rights plaintiff claimed to have under assignments from them. Defendant appealed from this order.

The application for an injunction *pendente lite* was heard on the complaint, answer and certain affidavits and exhibits. The complaint alleged, in substance, the following facts: Defendant land company is a Minnesota corporation with its principal place of business in St. Paul; its president, manager, and principal stockholder is H. H. Hamilton. Defendant D. M. Dilley was the agent of the land company in the transactions hereinafter mentioned. In August, 1914, defendants, wrongfully and unlawfully conspiring together for the purpose of cheating and defrauding plaintiff and Henry O. Thompson, Ray R. Thompson, F. W. Boesch, Harry E. Woodis and William J. Robinson, all residents of Blue Earth county, by selling to them as the property of said land company

certain Michigan lands, falsely and fraudulently represented to plaintiff and the others that it owned and had an unencumbered marketable title to 300,000 acres in Michigan and made various other false and fraudulent representations as to its title to, the quality and value of the land. Defendants represented that, if plaintiff or any of the persons named should purchase any part of the land on contract, he and they might select out of the entire tract the number of acres purchased by each. Dilley professed to be intimately acquainted with the land, and told plaintiff and the others that he wanted to be associated with them, and that, if they would severally buy substantial amounts, he would personally buy 10,000 acres at the same price and on the same terms it was offered to plaintiff and his associates and divide with them his commissions on the land sold to them.

Relying upon these representations, plaintiff agreed to purchase 5,000 acres of the land, to be thereafter selected by him, for the gross price of $40,000, and a written contract to that effect was executed by both parties. Plaintiff paid $5,000 in cash, less a discount of $1,190 for his share of Dilley's commissions, and delivered to the land company his 20 promissory notes, one due September 2 of each year beginning with 1915. At the same time the land company made other similar contracts for sales of unselected portions of the tract to the other parties, as follows: To Henry O., Ray R. Thompson and D. M. Dilley (the latter is styled "an ostensible purchaser"), 10,000 acres; to Dilley alone, 10,000 acres; to Boesch, 10,000 acres; to Woodis and Robinson, 10,000 acres. This made a total of 45,000 acres. After the execution and delivery of these contracts and the notes for the deferred payments, on the suggestion of defendants, made as a part of their scheme of defrauding plaintiff and his associates, the latter and Dilley pooled their interests, modifying the contracts so as to permit the selection of the entire 45,000 acres in common, and formed a corporation to take over the interests of all the individual vendees. In order to make the land to be selected an even 50,000 acres, Hamilton, president of the land company, agreed to take 5,000 acres, his contract, with the others, to be assigned to the corporation, which was thereafter formed under the name "Dilley-Thompson Land Company." Plaintiff and the other purchasers, including Dilley and Hamilton, assigned their contracts to

this corporation. At the request of Dilley, the new corporation authorized him to select for it the lands called for by the contracts; Dilley, with the assistance of the defendant land company, made this selection, and the defendant company tendered to the Dilley-Thompson Company the specific 50,000 acres so selected. The purchasers had wanted cut-over lands, and it had been represented to them that the lands were of this character, and that they were free from encumbrances. The lands selected were partly timbered lands, and were encumbered by timber reservations and permits running to various parties for long times in the future. These encumbrances were not removable, and were enumerated in the contract as exceptions from the title to be conveyed. Until the tender of this contract, neither plaintiff nor his associates had any notice or knowledge of the existence of these reservations and permits. When the contract was tendered, the Dilley-Thompson Company, plaintiff and his associates, refused to accept it, and the Dilley-Thompson Company hereupon reassigned to plaintiff and his associates the individual contracts. The complaint contains full and complete allegations as to the representations made, their falsity and the reliance upon them by the purchasers, and as to the fraud of Dilley in getting himself appointed to act for the purchasers in selecting the lands while he was the agent of the seller. The foregoing is a synopsis of the allegations of the complaint as to the first cause of action.

For his second cause of action, in addition to the matters contained in the statement of the first cause of action, plaintiff counted on the Thompson contract; for his third cause of action, on the Boesch contract; and for his fourth cause of action, on the Woodis and Robinson contract, alleging that each was procured by the fraudulent representations pleaded, and making the following allegation as the fact and terms of the assignments by these men to plaintiff:

"That after making said payment and executing and delivering said notes, and before the commencement of this action, the vendee therein for a valuable consideration, sold said contract and unconditionally assigned the same and all his rights thereunder, in writing, to this plaintiff. That as a part of the consideration for said sale and assignment, said plaintiff agreed to assume and did assume all the obligations of

said vendee upon and under said contract and the said promissory notes given for the deferred payments thereunder."

The relief asked was that the court rescind and cancel all of the contracts; that all of the promissory notes be canceled and surrendered to plaintiff; that plaintiff recover of defendants the amounts of the cash payments made under the several contracts, and that plaintiff have a temporary and permanent injunction restraining defendant land company from attempting to enforce any of the contracts or the notes.

The answer of the defendant land company was a very lengthy document, and it is difficult to state its substance in a few words with any accuracy. It contained a general denial, allegations denying that Dilley was its agent in making the sales, and allegations to the effect that the encumbrances on the land were at all times well known to the purchasers. The making of the contracts and giving of the notes was admitted, but facts were pleaded, which, if true, showed that the various cash payments were but part cash, with allowances for real estate and other property conveyed by the purchasers to the company, and certain discounts to each purchaser for his share of Dilley's commissions on the price to the others. It is correct enough to say that the fraud was denied, and an attempt made to accuse the individual purchasers of acting fraudulently as to each other. The other defenses set up or attempted to be set up, are more material to the questions argued on this appeal. The answer alleges that the corporation, Dilley-Thompson Company, was formed at the suggestion of plaintiff and his associates, and before any negotiations were opened with defendant; that plaintiff and the other vendees, including Hamilton, transferred their contracts to it; and that plaintiff and Dilley, acting as the agents of the vendees, went to Michigan to select the lands; were shown by defendant lands that were not encumbered and lands that were, and selected the latter deliberately, because they were more valuable than the other lands, notwithstanding the timber reservations. The answer admits and alleges that after this selection by Dilley, the land company prepared and tendered to the Dilley-Thompson Company a contract for the sale to it of the 50,000 acres selected; that this contract was acceptable to the latter company and its stockholders, except as to about 6,000 acres in the south half of a certain township, in place of

which they desired to take a like amount of land in the north half; that thereupon a new contract, incorporating the suggested change was made, returned to the Dilley-Thompson Company and accepted by it.

The answer alleges that the Dilley-Thompson Company accepted this contract and ratified the selection of land therein contained with full knowledge of all the facts, and thereupon advertised the lands for sale as the lands of the corporation, exhibited the lands to customers, and made valid and binding contracts for the sale of certain portions of the land.

It is further alleged that the defendant was and is able to immediately furnish fee simple marketable title for said land; that the outstanding "timber permits" can be purchased and the land released therefrom at a nominal sum per acre; that Dilley, in selecting the lands, was not acting as defendant's agent nor under its influence, but was acting in all things as the agent of plaintiff and his associates, and of the Dilley-Thompson Company and its stockholders. The affidavits and exhibits used on the hearing in the court below relate to the claim that the Dilley-Thompson Company, after it received the contract from defendant, made contracts for the sale of portions of the land to others. It appears that one such contract was made, and that two others were made by one Guttersen, purporting to act as agent for the company, with individual purchasers.

The foregoing statement of the facts is fragmentary, but sufficient, we think, to show the situation before the trial court when it granted the injunction asked for.

Defendant vigorously argues that the trial court erred in enjoining the transfer of the notes pending the action, and for these reasons: (1) All the equities were fully and positively denied by the answer, supplemented by the exhibits, and therefore a temporary injunction should have been denied. (2) It conclusively appears that plaintiff and the other vendees ratified the transactions with full knowledge of the facts. (3) By the terms of the assignments by the other vendees to plaintiff the latter assumed, with full knowledge of the facts, the payment of all the promissory notes, thereby ratifying the transaction. (4) The causes of action, if any, of the other vendees were not assignable, and therefore plaintiff has no interest in the second, third or fourth causes of

action. (5) There was no assignment of these causes of action. (6) As to a certain $3,000 note executed by Boesch there was no necessity for enjoining its transfer, as it was past due, and therefore non-negotiable. We take up these contentions in the order stated.

1. The first contention merits but brief notice. The rule relied on by defendant is not an inflexible one, and it should never be applied where the answer does not fully and positively deny under oath the equities of the complaint. While fraudulent representations are denied, it seems to be admitted that defendant's title to much of the land was not unencumbered, and that defendant sought, contrary to its representations, to convey a title which was subject to timber reservations, which rendered the land much less valuable to the purchasers. Taking the complaint and answer together, we think the trial court was clearly justified in believing it quite probable that the material statements of the complaint as to the fraud of defendant would, on a final hearing, turn out to be true. Under these circumstances, it rightly refused to apply the rule relied on. It also appears quite clearly that the damage to plaintiff by the transfer of the notes to innocent purchasers pending the final hearing would probably be far greater than the loss to defendant by a temporary injunction.

2. The contention that it conclusively appeared that plaintiff and his associates, acting through the Dilley-Thompson Company, ratified the contract and the selection of lands under it, rests upon the claim that the Dilley-Thompson Company had knowledge of the falsity of the representations and the actual state of the title to the lands in December, 1914, and that in February and March, 1915, it contracted to sell 120 acres to one purchaser, 80 acres to another and 120 acres to another. The question whether the contract was ratified or adopted by plaintiff and his associates so that they have lost the right to have the contract rescinded for fraud, is one of fact to be tried and determined from the evidence when the case is tried on the merits. The pleadings and affidavits do not, in our opinion, show conclusively that the right to rescission has been lost. It is not clear that plaintiff and the other purchasers knew all the facts relating to the quality of or title to the land at the time the attempts were made to sell portions thereof, or that

they are necessarily bound, under the circumstances, by knowledge on the part of the Dilley-Thompson Company.

3. According to the allegations of the complaint as amended by stipulation of the parties, plaintiff, on the assignment to him by his associates of their rights under their several contracts, "agreed to assume and did assume all the obligations of said vendee upon and under said contract and the said promissory notes." This assignment was made after plaintiff had acquired knowledge of the fraud, and the claim is that, by agreeing to pay the notes of the other vendees, plaintiff is now precluded from claiming the right to rescind or the right to an injunction. We do not sustain this contention. Plaintiff assumed no obligations under the contracts assigned to him or on the notes of the other vendees except those which the assignors were under. If the contracts were not binding on his assignors, if they had good defenses to the notes, or the right to restrain their collection, plaintiff's assumption of their rights and obligations in no way validated the contracts or notes, or prevents him from now claiming the right to resist payment or to rescind.

4. The next point is that plaintiff has no interest in the causes of action based on the contracts of the other vendees, assigned to him, because such causes of action are not assignable. This conclusion is sought to be reached by applying the rule that an assignment of a bare right to file a bill in equity for a fraud committed upon the assignor is void as against public policy and savoring of the character of maintenance, to the assignments in this case. The rule is not doubted, but we cannot construe the assignments here as assignments of the mere rights of the assignors to bring suits to have their contracts set aside for fraud, or to obtain the equitable relief of rescission and injunction. The contracts themselves were assigned, and all the rights under them, and plaintiff assumed all the burdens. One of these rights was to insist upon performance of the contract by the vendor. Assuming now that the assignment transferred the rights of the vendee to sue or defend on the ground of fraud, these rights were merely incidental to the principal things assigned, the contracts, and it ought not to be said that a case is presented of an assignment of a bare right to bring suit. We are unable to hold that the assignments to plaintiff were void as

savoring of maintenance. The claim that the causes of action were not assignable is not supported by our decisions. Abramson v. Lamberson, 72 Minn. 308, 75 N. W. 226; 79 Minn. 135, 81 N. W. 768; Billson v. Linderberg, 66 Minn. 66, 68 N. W. 771; Hansen Mercantile Co. v. Wyman, Partridge & Co. 105 Minn. 491, 117 N. W. 926, 21 L.R.A. (N.S.) 727.

5. We have no difficulty in holding that an assignment by a vendee of a contract for the purchase of real estate and of all his rights thereunder, includes the rights of the vendee to all remedies, legal or equitable, that he may have against the vendor, and, among the others, the right to have the contract rescinded for fraud. Abrahamson v. Lamberson, supra.

6. The order appealed from should not be reversed because among the notes the transfer of which was enjoined was the over-due Boesch note. Assuming that plaintiff could make a valid defense to that note if suit was brought on it by a transferee, that fact is not sufficient to oblige us to say that the trial court abused its discretion in including this note with the others in the injunction. The validity of this note depends upon the validity of the Boesch contract, and can be determined in this action, thus avoiding another suit. If this action was only to enjoin the transfer of this note, there would be no ground for it, as plaintiff would have an adequate remedy at law, but as it involves all the notes, and all the contracts, the situation is materially different.

Our final conclusion is that the evidence warranted the trial court in granting an injunction *pendente lite;* whether the evidence on a trial will sustain the granting of a permanent injunction, or warrant a rescission of the contracts, we have no means of knowing. The issues made by the pleadings should be threshed out, and it seems quite appropriate that matters should remain *in statu quo* in the meantime. It is hardly necessary to state that, in determining whether to grant or refuse a temporary injunction, there is a wide discretion in the trial court.

Order affirmed.