GRACIE MAY JONES *et al. v.* MARY C. COMER *et al.*

(No. 9124)

Submitted January 21, 1941. Decided March 4, 1941.

*Lee, Blessing & Steed,* for appellants.
*R. E. O'Connor,* for appellees.

RILEY, JUDGE:

Plaintiffs, grantees of an allegedly defrauded grantor, Jemima Baldwin, filed their bill of complaint in the Circuit Court of Kanawha County, against the defendants, Mary C. Comer and B. I. Comer, her husband, praying (1) that a prior conveyance of an undivided one-half interest in eighty-six acres of land from the grantor to Mary C. Comer be set aside as fraudulent; (2) that the land be partitioned between plaintiffs and the Comers and plaintiffs' undivided interest therein allotted to them as a whole; and (3) that defendants be required to account for the rents and profits derived from said one-half interest from the death of Robert Borror, a life tenant.

From a decree sustaining the demurrer to the bill of complaint, refusing its amendment by making Jemima Baldwin a party plaintiff, and dismissing the bill, plaintiffs prosecute this appeal.

Under the will of C. D. Borror, who died in 1918, the eighty-six acres of land passed for life to his son Robert, then insane and confined in an asylum, with remainder after the death of Robert to his two daughters, Lucinda Baldwin and Jemima Baldwin, in equal parts. After testator's death, Lucinda Baldwin died intestate, leaving five heirs-at-law, four of whom conveyed their interest in the property to the defendant, Mary C. Comer, and the fifth conveyed her interest to the defendant, B. I. Comer, Mary C. Comer's husband. On February 23, 1934, Jemima Baldwin executed the deed under attack purporting to convey her undivided one-half interest in the land to the said Mary C. Comer. On April 19, 1939, Robert Borror died. On the following day, Jemima Baldwin executed a deed purporting to convey the same undivided one-half interest in the property to her seven children, plaintiffs herein. In July, 1932, the defendant, B. I. Comer, was appointed committee for Robert Borror; and in 1936, B. I. Comer, as committee for Robert Borror, with his wife, the said Mary C. Comer, leased said land for oil and gas; and the Comers have received the rentals since Robert Borror's death.

In addition to the foregoing, the plaintiffs in their bill of complaint allege that by virtue of the deeds from Jemima Baldwin to them and from the heirs of Lucinda Baldwin to the Comers, plaintiffs became tenants in common with defendants; that they believe the land is susceptible of partition, and if not that it should be sold; that the defendants are entitled to only one-half of the rents and profits of the land since Robert Borror's death, and the plaintiffs to the other one-half; and that B. I. Comer, as committee for Robert Borror, by legal steps dispossessed said Jemima Baldwin of said land. The bill of complaint further alleges that Comer conspired and confederated with his wife, Mary C. Comer, to defraud Jemima Baldwin; that by misrepresentation, deceit and

fraud he induced the latter, an illiterate person unacquainted with business transactions, to sign an instrument in writing which was represented to her to affect Robert Borror and necessary in order to get her share of her father's estate after Robert's death; and that if she did not sign and acknowledge it, she would lose her interest in said estate; that she was induced to go to the office of an attorney, the scrivener of the deed of Jemima Baldwin to Mary C. Comer, where she signed the same, believing at the time that it was to preserve her interest in her father's estate. The bill further alleges that neither the plaintiffs nor Jemima Baldwin knew the real character of the writing until after the death of Robert Borror and the purported conveyance of Jemima Baldwin to the plaintiffs, when plaintiffs learned it was a deed conveying Jemima's entire interest to Mrs. Comer, for the sum of fifty dollars, an alleged inadequate consideration. It is further alleged that shortly after the execution of said deed, a gas field was developed in the vicinity of the property, rendering it very valuable, and that the conveyance to the Comers of Lucinda Baldwin's undivided one-half interest in the property was for the consideration of two hundred and fifty dollars, which, in comparison with the fifty dollars paid to Jemima, shows the inadequacy of consideration for the deed from Jemima to Mrs. Comer.

The demurrer is based in the main upon the claimed incapacity of the plaintiffs to maintain this suit. Demurrants say that as a condition precedent to the maintenance of a partition suit, plaintiffs must first establish legal title. In appraising plaintiffs' right, we should first ascertain what, if any, title they obtained under the deed of their mother, Jemima Baldwin. This, of course, depends upon whether the deed from Jemima Baldwin to Mrs. Comer is void or voidable. If void, Mrs. Comer got no legal title, and the legal title devolved upon plaintiffs as the only actual grantees of Jemima Baldwin. If, on the other hand, the prior deed is voidable, the legal title became vested in Mrs. Comer, and the grantor had nothing more than a right (1) to rescind the Comer title and (2)

to enforce that rescission in a court of equity. Her deed to plaintiffs could not possibly have conveyed any greater rights. Because a fraudulent grantee under a voidable deed may before rescission, notwithstanding the fraud, give good title to a *bona fide* purchaser for value, the line of demarcation between a void and voidable deed should be sharply drawn. Whether Jemima Baldwin's deed to Mrs. Comer is void or merely voidable depends upon whether or not the fraud alleged is in the factum, as distinguished from fraud in the procurement, or treaty, of the deed. Fraud in the factum exists where one by fraud or artifice as in the case of substitution of one instrument for another, or artifice in the concealment of an instrument, is induced to sign an instrument other and different from that presented for signature [*Norvell v. Kanawha & Michigan Railway Co.,* 67 W. Va. 467, 68 S. E. 288, 29 L. R. A. (N. S.) 325; *Acme Food Co.* v. *Older,* 64 W. Va. 255, 61 S. E. 235, 17 L. R. A. (N. S.) 807; *Furst & Thomas* v. *Merritt,* 190 N. C. 397, 130 S. E. 40; *Pittsburgh Plate Glass Co.* v. *Fidelity & Deposit Co. of Maryland,* 193 N. C. 769, 138 S. E. 143; *Security Finance Co.* v. *Mills,* 195 N. C. 337, 142 S. E. 26]; or where the signature is obtained without fraud by an instrument, the validity of which requires delivery, as in the case of a deed, and delivery is obtained by fraud. *O'Connor* v. *O'Connor,* 45 W. Va. 354, 32 S. E. 276. In the latter case, delivery was obtained by fraud, accompanied by an unauthorized alteration in a writing, providing the condition under which delivery should be made, and this Court held that because of the fraudulent delivery the deed was void.

In the instant case the alleged misrepresentations merely went to the contents of the deed. There is nothing indicating that Jemima Baldwin did not sign the very instrument which was presented to her for signature in the scrivener's office. True, she is alleged to be an illiterate person of retarded mentality and unaccustomed to business affairs. If she did not know the contents of the deed, it was because it was not read or explained to her. There was no substitution of papers, and the Comer deed was, in fact, delivered unconditionally. So, if fraud

existed, it was fraud in misrepresentation as to the contents of the instrument which induced the grantor to affix her signature. Though there is confusion among the decided cases in which the words void and voidable have been used interchangeably and unscientifically, the rule is well established in this State that fraud in inducing a person to sign a contract or deed is simply fraud in the procurement. In *Hale* v. *Hale,* 62 W. Va. 609, 59 S. E. 1056, 14 L. R. A. (N. S.) 221, a father, who was wont to execute, without reading, deeds, prepared by his son, conveying small town lots, upon the son's representation as to what they contained, was induced to execute and deliver to the son a deed, for a recited nominal consideration, upon the fraudulent representation that it provided for the conveyance of a small town lot, whereas, in truth and in fact, it provided for a gift from the father of his entire interest in his wife's property. In that case, this Court held that notwithstanding the wide divergence between the false representation and the contents of the deed, the fraud was in the procurement of the deed. "One who executes the identical instrument which he intended to execute is bound thereby at law, although he was induced to do so by fraud practised in the preliminary negotiations or treaty, or by some fraudulent representation or pretense, as where one who can read the instrument neglects to do so because of false representations, or, if unable to read, does not have the instrument read to him, and so executes the instrument under a misapprehension as to its contents. * * * though he is bound at law, a court of equity may give relief against the instrument on sufficient showing in proper instances." 1 Black, Rescission and Cancellation, (2d Ed.) section 21. See also *Engeman* v. *Taylor,* 46 W. Va. 669, Pt. 1, Syl., 33 S. E. 922; *Tolley* v. *Poteet,* 62 W. Va. 231, 57 S. E. 811; *Sams* v. *Barnes,* 74 W. Va. 420, 82 S. E. 124; *Furst & Thomas* v. *Merritt, supra.*

In *National Provincial Bank* v. *Jackson,* 33 Ch. D. 1, 55 L. T. N. S. 458, 34 Week Rep. 597, the court held that where a brother obtained from his sisters, who had no idea that they were thereby conveying their property, signatures

to deeds upon the representation that their signatures were necessary to clear off a mortgage on the property, it was held that inasmuch as the sisters, though they did not understand the nature of the deeds, knew they were executing something which dealt in some way with their property, the deeds were not void in law. In *Hunter* v. *Walters*, L. R. 7 Ch. 75, 41 L. J. Ch. N. S. 175, 25 L. T. N. S. 765, 20 Week Rep. 218, a similar question was raised where a mortgagee signed a deed conveying the legal title to property upon the representation that it contained only an equity of redemption. And in *Lawrence* v. *Guaranty Investment Co.*, 51 Kan. 222, 32 Pac. 816, a similar holding was had in a case where a deed was signed in the belief that it was a mortgage.

Thus it seems the fraud alleged here is simply in the inducement. In the appraisal of cases of this kind dealing with substantial property rights, looseness in nomenclature and failure to draw technical lines sharply, may bring about unsatisfactory results in future litigation. Disparity between representation and the contents of an instrument cannot ordinarily be used to test whether fraud is in the factum or in the procurement. It follows that under the decisions of this Court, the deed in question is voidable. *Coffman* v. *Viquesney*, 76 W. Va. 84, Pt. 3 Syl., 84 S. E. 1069; *Hale* v. *Hale, supra; Engeman* v. *Taylor, supra.* Thus, the legal title to the property in question resides in Mrs. Comer. If plaintiffs got anything at all under the deed from their mother, it could have been nothing more than the right to rescind the Comer deed and enforce that right in a court of equity.

The question then arises whether subsequent grantees from a defrauded grantor can maintain a suit in equity to cancel a prior deed alleged to be voidable on the ground of fraud. Of course, if the prior deed is void, no title passed, and there would be nothing to rescind, as title would pass by virtue of the subsequent deed. In the instant case, however, title vested in Mrs. Comer, and the plaintiffs got no title for the very reason that their grantor, not having rescinded, had no title to convey. The great majority of the cases hold that a naked right to

rescind or to sue for rescission is unassignable. A few will suffice: *Graham* v. *LaCrosse & M. R. Co.*, 102 U. S. 148, 26 L. ed. 106; *Traer* v. *Clews*, 115 U. S. 528, 29 L. ed. 467, 6 S. Ct. 155; *United Zinc Cos.* v. *Hardwood*, 216 Mass. 474, 103 N. E. 1037; Ann. Cas. 1915B, 948; *Cornell* v. *Upper Michigan Land Co.*, 131 Minn. 337, 155 N. W. 99. See generally, 4 Am. Jur., Assignments, section 40; Id. 1940 Supplement, and note to *Mayer* v. *Rankin*, 91 Utah 193, 63 Pac. (2d) 611, 110 A. L. R. 839, 849, 864. A situation, such as we have here, in which an allegedly defrauded grantor makes what purports to be a conveyance of his entire interest in property, notwithstanding the legal title resides in a third party under a prior voidable deed, which has not been rescinded, presents a question which has caused a wide conflict in American authorities. For a collation of authorities see note to *Mayer* v. *Rankin*, *supra*. See also 4 Am. Jur., Assignments, sections 37 and 40; Id. 1940 Supplement. Though there seems to be a tendency in some jurisdictions to give to subsequent grantees the right to sue for cancellation, there is respectable authority to the effect that prior to rescission by the allegedly defrauded grantor, subsequent grantees cannot maintain a suit to cancel a voidable prior conveyance. *Stewart* v. *Stewart*, 154 Ky. 367, 157 S. W. 706; *Cochran Timber Co.* v. *Fisher*, 190 Mich. 478, 157 N. W. 282, 4 A. L. R. 9; *Haseltine* v. *Smith*, 154 Mo. 404, 55 S. W. 633; *Weissenfels* v. *Cable*, 208 Mo. 515, 106 S. W. 1028; *Crocker* v. *Bellangee*, 6 Wis. 645, 70 Am. Dec. 489. We think the reasoning underlying the latter decisions is supported by a strong public policy.

Because the Comer deed, so far as this record is concerned, has never been rescinded, Mrs. Comer alone holds title, and consequently the deed to plaintiffs, if it had any effect at all, simply gave them the right to rescind the prior deed and sue for cancellation. It is quite difficult to distinguish in principle the situation which we find in this case, and the cases which hold that a defrauded grantor cannot assign the naked right to rescind a prior voidable deed and sue for its cancellation. If parties in the situation of the instant plaintiffs are to be entertained

by courts of equity in this State, inequitable persons not having the good faith which the plaintiffs here may have, could buy up claims to real estate under the cloak of taking deeds therefor, and thus could harass property holders who, in the effort to avoid litigation, might be persuaded to buy their peace.

Plaintiffs, however, say that this suit is primarily one for partition and incidentally for the cancellation of a fraudulent deed. Reliance is had upon Code, 37-4-1, which provides, in effect, that tenants in common, joint tenants, and coparceners shall be compellable to make partition and that the court having jurisdiction of the cause may take cognizance of all questions of law affecting the legal title that may arise in any proceeding. Under this section only tenants in common, joint tenants, and coparceners are proper parties plaintiff, and this Court has so held in *Smith* v. *Vineyard,* 58 W. Va. 98, Pt. 1 Syl., 51 S. E. 871, and *Woodrum* v. *Price,* 100 W. Va. 639, 131 S. E. 550. Because, as we have hereinabove suggested, plaintiffs' grantor had under the prior deed divested herself of all title to the property, legal and equitable, and had only the right to rescind the deed, if, in fact, voidable, and sue for cancellation, plaintiffs do not, by virtue of the deed to them, come within any of the three forms of tenancy prescribed by the statute.

Notwithstanding the statute provides that a court having jurisdiction of a partition suit may take cognizance of "all questions of law affecting the legal title" properly sought to be partitioned, we do not think that the circuit court had any jurisdiction to adjudicate the final ownership of the legal title conveyed by the deed to Mrs. Comer. The undivided interest in the property residing in Mrs. Comer under the Baldwin deed is an outstanding title, adverse and hostile to plaintiffs' claim. A court of equity has no jurisdiction, in our opinion, to adjudicate in a partition suit any question of title, except the jurisdictional question whether or not the parties are tenants in common, joint tenants, or coparceners, and where jurisdiction has been so determined the court's power to adjudicate questions of title is confined to conflicting claims to

the real estate of the parties compellable to make partition. *Smith* v. *Vineyard, supra,* 100; *Carberry* v. *W. Va. & P. R. Co.,* 44 W. Va. 260, 28 S. E. 694; *Cecil* v. *Clark,* 44 W. Va. 659, 30 S. E. 216; *Woodrum* v. *Price, supra.*

The plaintiffs having no right to bring this suit, the attempted intervention of Jemima Baldwin as a party plaintiff did not avail for any purpose. Where a court is without jurisdiction because the parties plaintiff have no interest in the subject matter, the jurisdictional defect is fatal and cannot be corrected by the making as party plaintiff the person in whose name the suit should have been instituted in the first instance. Such procedure, if permitted, would be decidedly irregular and not conducive to the orderly conduct of litigation.

For the foregoing reasons we are of opinion that the chancellor did not err in sustaining the demurrer to, and dismissing the bill of complaint, and overruling the motion that Jemima Baldwin be made a party plaintiff.

*Affirmed.*