WHITE v. TEXAS Co. et al.

No. 3650.    Decided December 14, 1921.    (202 Pac. 826.)

1. PLEADING—FACTS ALLEGED IN COMPLAINT ASSUMED TRUE ON DEMURRER. Facts alleged in complaint must be assumed to be true on demurrer.

2. CORPORATIONS—COMPLAINT HELD TO STATE GOOD CAUSE OF ACTION FOR RECOVERY OF STOCK PURCHASED BY MEANS OF FRAUDULENT REPRESENTATIONS. Complaint, pleading that officers of oil refining company induced plaintiff stockholders and their assignors whose confidence they had won to sell their stock for grossly inadequate price to another corporation by means of fraudulent misrepresentations as to value of stock, financial condition of corporation, and as to expiration of crude oil contracts, which in fact had been renewed, that officers had acquired the stock from the other corporation pursuant to fraudulent agreement, and that transactions had been rescinded on discovery of fraud *held* to state good cause of action as against the officers and the other corporation for recovery of legal ownership of the stock and the dividends received by officers and other corporation while holding stock, regardless of who held ownership of stock at time of rescission; all of such defendants being parties to the fraud.

3. CORPORATIONS—CONFIDENTIAL RELATIONSHIP BETWEEN SELLER AND BUYER OF STOCK REQUIRES UTMOST GOOD FAITH ON PART OF BUYER. Ordinarily the owner of stock or other personal property will be presumed to know its worth and value, and cannot complain that he parted with it for an inadequate consideration by reason of false representations made to him by the purchaser, but the confidential relationship of the seller and buyer, together with the lack of knowledge on the part of the

seller, may be such as to require the utmost good faith and fair dealing on the part of the buyer.

4. CORPORATIONS—OFFICER PURCHASING STOCK NOT BOUND TO DISCLOSE INFORMATION GAINED BY REASON OF OFFICIAL CONNECTION. An officer of a corporation in purchasing stock from a stockholder is not bound to disclose the knowledge or information he has gained by reason of his official connection with the corporation.[1]

5. CORPORATIONS—RESCISSION OF SALE OF STOCK INDUCED BY FRAUD REINVESTS SELLER WITH RIGHTS OF OWNERSHIP, INCLUDING RIGHT TO ASSIGN STOCK TO ANOTHER. Rescission by seller of sale of stock, induced by fraud, on discovery of the fraud, reinvests seller with rights of ownership, and entitles him to assign stock to third person.

6. EQUITY—LAW AND EQUITY MAY BE ADMINISTERED IN SAME ACTION. In Utah, law and equity in a proper case may be administered by the courts in the same action.

7. CORPORATIONS—COMPLAINT TO RECOVER STOCK SOLD UNDER FRAUDULENT REPRESENTATIONS HELD NOT DEMURRABLE AS AMBIGUOUS, UNINTELLIGIBLE, OR UNCERTAIN. Complaint to recover ownership of stock on the ground that plaintiff and his assignors had been induced to sell stock by defendant officers of corporation to other corporation by fraudulent misrepresentations as to value of stock and condition of corporation, and that defendant officers had acquired such stock from such other corporation, *held* not demurrable, as ambiguous, unintelligible, or uncertain.

8. CORPORATIONS—COMPLAINT TO RECOVER STOCK PROCURED BY DEFENDANTS BY FRAUDULENT REPRESENTATIONS HELD NOT DEMURRABLE FOR MISJOINDER OF PARTIES. Complaint to recover stock, alleging that defendant officers of corporation had induced plaintiff and his assignors, by means of fraudulent misrepresentations as to the value of the stock and the financial condition of the corporation, to sell the stock to other corporation, also made a party defendant, at a grossly inadequate price, and that, pursuant to fraudulent agreement, such officers subsequently acquired such stock from the other corporation, *held* not demurrable for misjoinder of parties; all defendants being parties to the fraud.

Appeal from District Court, Third District, Salt Lake County; *J. W. Stringfellow,* Judge.

Action by John T. White against the Texas Company and

others.    From orders sustaining demurrers to complaint, plaintiff appeals.

REVERSED AND REMANDED, with directions.

*James Ingebretsen* and *Dey, Happaugh & Mark,* all of Salt Lake City, for appellant.

*Ball, Musser & Robertson,* of Salt Lake City, for respondents.

CORFMAN, C. J.

Plaintiff brought this action against the defendants in the district court of Salt Lake county to be adjudged the rightful owner of certain shares of capital stock in the Utah Oil Refining Company, a corporation, alleged to have been obtained from him and his assignors by means of false and fraudulent representations made on the part of the defendants John C. Howard and W. B. Sage. Plaintiff also prays for an accounting and payment to him of the dividends and money received by defendants on account of the stock alleged to have been thus acquired.

The complaint consists of five separate causes of action, each predicated upon a similar statement of facts, except that the last four causes of action set forth assignments of stock involved, together with the rights of the respective stockholders thereunder, which assignments are alleged to have been made to plaintiff by his assignors prior to the commencement of the action.

The individual defendants John C. Howard and W. B. Sage, filed demurrers, both general and special, to the several causes of action stated in the complaint. The demurrers were sustained, and an order was made and entered by the district court, dismissing the plaintiff's complaint, upon his failure to further plead. The plaintiff appeals from that order, and raises the question as to whether or not the allegations of his

complaint are sufficient to withstand the demurrers inter-
posed against it by the defendants.

The complaint is a very lengthy one. It would be imprac-
ticable for the purposes of an opinion to set it forth here in
detail. Briefly stated, the first alleged cause of action shows:
That the defendant Texas Company is a corporation or-
ganized under the laws of the state of Texas, and that at the
time of the grievance complained of by plaintiff it was the
owner of a majority of the stock of the Utah Oil Refining
Company, a Utah corporation engaged in the business of re-
fining oil and in marketing the products thereof; that under
contracts with producers it received crude oil, refined the
same, and made large profits thereby; that the said Utah Oil
Refining Company and its predecessor, the Lubra Oils Com-
pany, a Utah corporation, were organized many years prior
to the grievances complained of by plaintiff, and that the de-
fendant John C. Howard was one of the moving spirits and
principals in the organization and promotion of said enter-
prise; that the plaintiff and his assignors in the early years of
the development and during the growth of said Utah Oil Re-
fining Company were among its stockholders, and from time
to time purchased additional stock and furnished moneys dur-
ing periods of adversity and financial stress, with a view of
making permanent investments and keeping said Utah Oil
Refining Company a substantial and going concern whereby
their said investments would be secure and yield them a prof-
itable return or income; that as a promoter and as one of the
leading spirits in said enterprise they trusted the defendant
John C. Howard implicitly, relied upon him for their sole
information with respect to all of the affairs of said corpora-
tion, both financial and otherwise, and permitted him to elect
the defendant W. B. Sage secretary of the corporation, and
relied upon said Howard's judgment and advice with respect
to all things pertaining to the financial conditions and busi-
ness affairs of said corporation and their investments and
holdings therein, all of which the defendants well knew at
the time of making the false and fraudulent representations
referred to and complained of by plaintiff; that after a long

and doubtful existence the Utah Oil Refining Company developed into a strong business concern, and in the latter part of the year 1915 was upon the eve of general financial success, with large profits already earned, and at said time had a large surplus over and above its liabilities, including the par value of its stock, all of which was then unknown to the plaintiff and his assignors, but was well known to each and all of the defendants; that the said Texas Company thereupon employed the defendants John C. Howard and W. B. Sage to induce and procure the plaintiff and his assignors to sell and dispose of their holdings of stock in the said Utah Oil Refining Company at the lowest possible price that they could be induced to sell for; that the said Texas Company agreed with the defendant John C. Howard that as his reward and as a share of the profits which the said Howard should receive for his services he should be given an opportunity to buy stock in the said Texas Company at a price less than its real or market value; that the said Howard should also have the management of the said Utah Oil Refining Company, as long as he desired to retain the position, at an increased salary of $2,000 per annum over and above the salary he was receiving at the time said employment arrangement was entered into; that it was also agreed between the said Texas Company and the said defendant Sage that the latter should receive as his reward and as a share of the profits realized a salary and an opportunity to buy stock in the said Texas Company at less than the real or market price; that under said arrangements and employments aforesaid, and at said time, the plaintiff was the owner of 2,000 shares of the capital stock of the Utah Oil Refining Company which he would not have disposed of except for the false and fraudulent representations of the defendants hereinafter set forth; that in carrying out the scheme and purpose to secure the plaintiff's and his assignor's stock the said defendants systematically contrived and intended, by means of and through the trust and confidence reposed in the said defendants Howard and Sage through their long association with plaintiff and his assignors and their several positions as president, general manager, and

secretary of said Utah Oil Refining Company,. to create and promote, through said officers and their statements and conduct, a state of fear and alarm on the part of stockholders, including the plaintiff and his assignors, and through defendants' representations, acts, and conduct to cause the plaintiff and his assignors to believe the affairs of the said Utah Oil Refining Company were in a critical condition, on the verge of failure, and menaced by many unfortunate conditions, so that the plaintiff and his assignors might and would be induced to sell their stock to said Texas Company; that pursuant to the fraudulent scheme and. design of the defendants the said Howard and Sage, acting in breach of trust and confidence reposed in them by plaintiff and his assignors, on or about January 25, 1916, falsely and fraudulently represented to the plaintiff that the said Utah Oil Refining Company was earning only 6 per cent. per annum upon its capital stock; that the stock was a poor investment, and not worth more than $1.25 per share, and that the plaintiff would be fortunate to sell at that price; that if he could receive $1.50 per share for his stock he would be lucky, and should take it, as that price would be far more than it was worth; that the crude oil contracts of the company were about to expire and could not be renewed, and that the business of the corporation would therefore be .converted from a refinery into a mere distributing station; that the said Texas Company held control of the stock, and was determined to obtain all of the stock of the said Utah Oil Refining Company, and that not only by the direct statements aforesaid, but by insinuation, suggestion, conduct, and demeanor, said defendants willfully designedly, falsely, and fraudulently suggested and implied that the said enterprise would and had proved a failure, and that it was prudent and advisable for plaintiff to sell his stock for any price and upon any terms available; that the plaintiff was misled thereby, and, while relying upon the statements, conduct, and representations aforesaid of the defendants, and believing the same to be true, sold and transferred his said stock to the Texas Company for the price of $1.50 per share, which was grossly inadequate, and for which price plaintiff

would not have sold but for the false and fraudulent representations aforesaid; that in truth and fact the Utah Oil Refining Company at the time of said grievances was earning 50 per cent. upon the capital stock of said company, and was at the time said representations were made; that said stock was of sound and substantial value as an investment; that the crude oil contracts of the said company had not expired, but, to the contrary, the same had then been renewed, and other valuable contracts had been entered into, assuring a fixed supply of crude oil; that it was not then contemplated nor was it ever intended to convert said refinery into a distributing station, nor did said Texas Company intend to use its position as a holder of a majority of the stock of said company to freeze out or compel the plaintiff to sell his stock; that predicated upon earnings, upon its growth and business, assets and approximate profits, said stock was then worth in excess of $10 per share; that the defendants Howard and Sage, while making said false and fraudulent representations, willfully concealed from plaintiff and his assignors the true condition of said company for the purpose of inducing them and other stockholders of the said Utah Oil Refining Company to sell their stock to the Texas Company, and by reason of which, and by and under certain arrangements with the Texas Company concerning which the plaintiff is not advised, purchased and secured for their own behalf and on behalf of their business associates all of the stock of said Utah Oil Refining Company which had been acquired and was owned by said Texas Company; and that the said defendants Howard and Sage retained for themselves large blocks of stock of the said Utah Oil Refining Company out of said holdings of the said Texas Company, including the stock sold and assigned by the plaintiff herein to said Texas Company, and that the said Howard and Sage still hold the stock so purchased; that upon said stock so acquired the said defendants have received dividends and profits in large sums of money, the exact amount of which is to plaintiff unknown; that on or about May 1, 1918, the plaintiff first discovered the frauds and wrongs committed by the defendants, as aforesaid, and thereupon, June 27, 1918,

rescinded said sale and demanded his said stock and the dividends which had accrued thereon, and offered to restore to the defendants the consideration received for said stock, and the plaintiff now offers to do any and all things which in equity and good conscience he should be required to do, but, notwithstanding the premises, the said defendants have neglected and refused to return said stock or to account therefor.

It is further alleged, on information and belief, that said stock now has a value of $25 per share, and that dividends and profits have accrued thereon which exceed the sum of $10,000.00.

The allegations of each of the other causes of action are of like import and effect, as before stated, with the additional allegations of an assignment of stock, together with the rights of the assigning stockholders thereunder.

The separate demurrers of the individual defendants to the complaint are identical in form and grounds stated. Upon the general ground that the complaint does not state facts sufficient to constitute a cause of action they contend: (1) The alleged fraud is not sufficient to justify the attempted rescission; (2) the attempted rescission is insufficient, since it operated against the Texas Company only; (3) if it be determined that the rescission was abortive, then the second, third, and fourth counts do not state causes of action, because based on nonassignable causes.

Assuming the facts alleged in the complaint to be true, as we must in passing upon the demurrers, we can arrive at no other conclusion than that the plaintiff would have a legal right to rescind the sale of his stock to the defendant Texas Company, and that it and the individual defendants alike were interested parties and active participants in the fraud and deceit practiced, which induced the sale of stock as made by plaintiff and his assignors. We are also of     1, 2 the opinion that if the facts stated in the complaint are found by competent evidence to be true, the plaintiff may be awarded, after proper trial, the relief prayed for in the complaint.

Ordinarily the owner of stock or other personal property will be presumed to know its worth and value, and he may not be heard to complain that he parted with it for an inadequate consideration by reason of false representations made to him by the purchaser. But, nevertheless, the confidential relationship of the seller and buyer, together with the lack of knowledge on the part of the seller, may be such as to require the utmost good faith and fair dealing on the part of    **3, 4** the buyer. The parties in this case, under the facts and circumstances alleged in the complaint, were not dealing at arm's length, as contended for by defendants. No fault is to be found with the following cases and authorities cited in defendants' brief, to the effect that an officer of a corporation·in purchasing stock from a stockholder is not bound to disclose the knowledge or information he has gained by reason of his official connection with the corporation. 1 Black, Rescission and Cancellation of Contracts, § 51; 1 Cook, Corp. (6th Ed.) 989; 10 Cyc. 796; *Carpenter* v. *Danforth,* 52 Barb. (N. Y.) 581; *Board of Com'rs of Tippecanoe* v. *Reynolds,* 44 Ind. 509, 15 Am. Rep. 245; *Haarstick* v. *Fox,* 9 Utah, 110, 33 Pac. 251.

The complaint under consideration in the present case, as has been seen, takes a very broad scope as to matters relied upon for relief, but the relationship of the parties and the acts and conduct of the defendants relied upon by plaintiff as constituting actionable fraud are alleged with the greatest particularity, and seem to clearly and specifically meet every essential element required in order to justify a rescission of contract.

In the present case, the respective attorneys have refrained from discussing in their briefs the legal effect in detail of the specific allegations of fraud alleged and relied upon by plaintiff in his complaint, but have discussed the allegations and effect thereof only in a general way. Counsel for the defendants, in their brief, have quoted extensively from Black on Rescission and Cancellation of Contracts, vol. 1, p. 162 et seq., wherein the author states that the elements justifying rescission of a contract on the grounds of fraudulent representa-

tions, as generally laid down by the courts, are as follows:

"(1) There must have been a false representation as to a material matter of fact; (2) there must have been scienter or guilty knowledge of its falsity on the part of the person making it; (3) the person to whom it was made must have been ignorant of its falsity; (4) there must have been an intention that it should have been acted upon by him; (5) the latter must have relied on the misrepresentation, and have been deceived by it, and acted upon it; (6) resulting loss, damage, or injury to him must be shown as a consequence of it."

The same author then proceeds:

"But if perfect accuracy in the formulation of a general rule is required, it may easily be shown that the foregoing commonly accepted enumeration is not nearly comprehensive enough. * * * To make the rule absolutely complete, at least the following points should be added to those mentioned above: (7) The representation must relate to a past or present matter of fact, not a matter of law, and must not be merely promissory, and must not be put forward simply as an expression of opinion; (8) it must have been made by the party sought to be charged, or by his agent, or some one authorized to make it in his behalf; (9) it must have been made to the complaining party, or made to a third person in order to be communicated to him, or made to the general public and brought to the individual notice of such party; (10) the circumstances must have been such as to justify the defrauded party in relying on the representation, as a basis for his own decision or action, without making an independent investigation of its truth or falsity, or he must have been in some way dissuaded or prevented from making a sufficient investigation."

We think every essential called for in the foregoing text has been fully met by the allegations of the plaintiff's complaint herein. We have heretofore set forth as much of the complaint as in our opinion sustains this view. Nor does the complaint show that the rescission of sales relied on by plaintiff were operative against the Texas Company only. All the defendants, it is alleged, were parties to the same fraudulent scheme or plan to divest the plaintiff of his stock for a price merely nominal as compared to its actual value. All shared in the owner's deprivations and the profits realized therefrom, and it is further alleged that the individual defendants still keep and hold the stock. How, then, a rescission of sale can be abortive is not made clear to us by defendants. For the

reasons assigned in the complaint, the sales and transfers of the stock to the Texas Company by plaintiff's assignors were brought about in precisely the same fraudulent manner as that in which the plaintiff's stock was acquired by defendants. Possibly the fraudulent acts and conduct of the individual defendants may have inured to a greater or less degree to the benefit of one or more of the defendants, and none of the stock may have been held at the time of rescission by one or the other of the defendants, but with knowledge on the part of all, the defendants all being participants in the wrongs complained of, no reason is assigned, nor is it at all made to appear, why in this case they should not be held equally liable. *Hubbard* v. *Weare,* 79 Iowa, 678, 44 N. W. 915; *Tyler* v. *Savage,* 143 U. S. 79, 12 Sup. Ct.'340, 36 L. Ed. 82; 1 Thompson on Corp. (2d Ed.) 726.

If plaintiff's complaint, under the facts and circumstances alleged, is properly grounded in fraud—and we think it is— then the sales were not bona fide, and no title to the stock passed to any of the defendants. If the rescission took place as alleged in the complaint, the effects were to reinvest the plaintiff and his assignors with their rights of ownership in the stock. Plaintiff's assignors thereupon assigned their stock to him as they would have a perfect right to do as a matter of course.

What has been said as to the sufficiency of the complaint in general must be held to apply with the same force and effect as to the special grounds of demurrer. It must be kept in mind that in our jurisdiction law and equity, in a proper case, may be administered by the courts in the same action. The complaint in our judgment is not amenable to the special grounds of demurrer that it is ambiguous, unintelligible, or uncertain, nor is there a misjoinder of parties, for the reasons heretofore stated.

We think the district court erred in sustaining the separate demurrers of the defendants John C. Howard and W. B. Sage to plaintiff's complaint, and in entering a judgment of dismissal thereupon. It is therefore ordered that the judgment of the district court be, and the same is hereby, reversed. Let

Certiorari.   Orders affirmed

the case be remanded, with directions to the district court to vacate and set aside its orders sustaining said demurrers and to enter its orders overruling the same, and to then proceed with the case.   Plaintiff to recover costs.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.