# UNITED STATES BOND & FINANCE CORPORATION v. NATIONAL BUILDING & LOAN ASS'N OF AMERICA (O'NEILL et al., Interveners).

No. 5094.   Decided July 5, 1932.   (12 P. [2d] 758.)

*Leslie Frazer,* of Salt Lake City, for appellants.

*B. L. Liberman,* of St. Louis, Mo., and *Homer Holmgren* and *Hurd & Hurd,* all of Salt Lake City, for respondents.

*Badger, Rich & Rich,* of Salt Lake City, for defendant respondent.

FOLLAND, J.

This suit was brought by plaintiff against defendant to recover on account of the alleged conversion of two certain installment savings certificates issued by defendant to Katherine E. Jackson and Alice Boyd O'Neill, respectively. Plaintiff alleged in its complaint that the certificates had been assigned to it by the owners and surrendered by it to the defendant for transfer. Defendant answered denying the conversion of such certificates and alleging that Mrs. Jackson and Mrs. O'Neill had repudiated their assignments of such certificates and had notified defendant not to transfer them or to pay the cash surrender value thereof to anyone except to themselves. Katherine E. Jackson and Alice Boyd O'Neill filed separate complaints in intervention seeking cancellations of the assignments of the certificates made by them to plaintiff and the return to them of the certificates. In the complaints in intervention it is alleged that on or about the 28th day of October, 1927, at Salt Lake City, Utah, pretended contracts were made and entered into by and between the plaintiff and interveners by the terms of which interveners agreed to purchase, and plaintiff agreed to sell, certain of its first mortgage real estate gold bonds to be issued the purchasers upon completion of certain monthly payments thereafter to be made extending over a term of years, the bonds to be issued in consideration of the monthly payments and in further consideration of a down

payment represented by the assignment to plaintiff by interveners of certain savings certificates of the defendant National Building & Loan Association of America; that fraudulent representations were made which induced the assignments of the savings certificates; that the plaintiff company had not complied with the provisions of Laws Utah 1925, chapter 87, by registering its securities; that under the provisions of said chapter the pretended contracts between plaintiff and interveners were voidable at their election; and that shortly after the 20th day of October, 1927, and before the commencement of this action, interveners rescinded said contracts and notified plaintiff of such rescission. Interveners prayed that the assignments of the installment savings certificates be declared null and void and that they be declared the legal owners of the certificates. Plaintiff, answering the complaints in intervention, denied the alleged fraud; admitted the making of the contracts for the sale of its first mortgage real estate gold bonds substantially as alleged; denied that such contracts were entered into in Salt Lake City, Utah; and alleged that they were entered into at Ely, Nev.

The court made a finding that the defendant National Building & Loan Association of America was merely an impartial stakeholder of the installment savings certificates, the subject of the action, and that it held possession of them for the use and benefit of the owners and was ready and willing to deliver possession of such certificates or pay the cash surrender value thereof to such party as the court should decide was the owner. This finding is not assailed.

The court also made findings that the written contracts between plaintiff and interveners were made and entered into at Ely, Nev., and that "at the time of the execution of said contracts said agents were acting within the scope of their authority"; that the contracts were not procured through fraud or misrepresentation practiced upon interveners by plaintiff, and entered judgment in favor of the plaintiff and against defendant National Building & Loan

Association of America for the cash surrender value of the installment savings certificates. From this judgment the interveners Jackson and O'Neill appeal. Appellants do not question the finding on the issue of fraud and misrepresentation.

All the alleged errors assigned go to the proposition that the contracts were made in Utah, were to be performed in this state, and must therefore be controlled by the laws of Utah. It is urged by appellants that the findings that the contracts were made and entered into in Nevada is not supported by the evidence and is against the evidence. It is conceded that the securities which the United States Bond & Finance Corporation undertook to sell were not registered for sale in Utah pursuant to the requirements of Laws Utah 1925, c. 87, p. 171. The right of rescission is claimed by virtue of section 18, wherein it is provided: "Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser."

The important question for decision is one of fact and is not free from difficulty. It is disclosed by the evidence that Mrs. Jackson and Mrs. O'Neill were separately solicited by agents of the United States Bond & Finance Corporation to purchase certain of its real estate gold bonds. The negotiations in each case resulted in a writing, the one signed by Mrs. Jackson being as follows:

"United States Bond & Finance Corporation
"District Office, Salt Lake City, Utah
"Series, Dated Back 192—
"Next Pymt. due Nov. 1st, 192—
"Payable at Office
"Gentlemen:

"Please execute and deliver to me when paid for, one of your First Mortgage Real Estate Gold Bonds with interest coupons attached, of the face value of Five Thousand Dollars, for which I will pay you the sum of 3600 Dollars, at the rate of 30 Dollars per month for a period of 120 months. I hand you 687.50 Dollars to apply on the purchase price.

"On my equity in the bond or notes to be executed and delivered I am to receive 6% interest, compounded semi-annually, and computed from the first of the month following the date of payment, and said 6% interest as it is compounded and accumulates you are instructed to credit on my account and add to my principal payments until the same aggregates the full face value of the bond.

"Copy of current bond has been examined by me and the corporation agrees to furnish me a copy of said bond for my information, together with interest coupons attached and also account book in which a record of payments made by me hereunder shall be kept.

"When said bond is paid for I will select one of your current issue of the denomination specified.

> "Geo. B. Veater & Parkins,
> > "Bonded Representative.
> "Katherine Jackson,
> > "Purchaser.
> "Address Box 371, Ely, Nevada.

"Representative taking this order has no authority to promise or make any agreement not contained in this order. Oct. 27, 1927."

The writing signed by Mrs. O'Neill is identical in form, except that it cites payment of $832.25 and bears the signatures of W. R. Beckstead and Parkin, bonded representative, and Alice Boyd O'Neill, purchaser. The corporation claims this is a complete bilateral contract binding alike on the corporation and the purchaser. Appellants contend it is merely an application which did not ripen into a contract between the parties until accepted by the corporation at its Salt Lake City office; and that such acceptance is evidenced by letters sent to the interveners. The letter received by Mrs. Jackson is as follows:

> "United States Bond & Finance Corporation
> "604 Beason Building
> "Salt Lake City, Utah,
> > "October 28, 1927.

"Katherine Jackson,
"Ely, Nevada.
"Dear Madam,—

"We enclose herewith a Sample Bond together with interest coupons attached for your information, also a Pass Book in which a record of payments made by you are kept.

"We are receipting your Pass Book for the amount of $687.50 on a $5000.00 Bond as per your application of recent date. When next payment is due, please forward your Pass Book with the remittance to home office for proper credits.

"We thank you for this affiliation and assure you of our most hearty co-operation.

"Very truly yours,
"United States Bond & Finance Corporation,
"A. J. Mercer, Secretary."

The letter addressed to Mrs. O'Neill was identical in form and content, with the exception that it recited the receipt of $832.25.

We may assume without deciding that if the so-called contracts were mere orders which required acceptance by the company at its home office, and if the company did so accept, the contracts were made in Utah because the last act necessary to give validity to the contracts was performed in this state. *Lawson* v. *Tripp*, 34 Utah 28, 95 P. 520.

On the other hand, if the contracts were complete ■■ when signed by the purchasers and the bond representatives of the corporation at Ely and did not require acceptance by the corporation at its home office, they were then Nevada contracts. If the bonded representatives had authority to bind the company and did so as a finality, the place where they entered into the agreements was the place where they were made, even though the corporation afterwards approved the contracts. 6 Page on Contracts (2d Ed.) § 3574, p. 6181; 23 R. C. L. 1255. The apparent authority of the bond representatives must be gathered from the facts and circumstances of the transaction as shown by the evidence. 21 R. C. L. 854. Neither party saw fit to prove from the records of the corporation the extent or scope of the authority delegated to the bond representatives nor that the fact of such authority, whatever it may have been, was communicated to interveners.

The contract is on a printed form furnished by plaintiff with blanks left for filling in the face value of bonds purchased, the amount to be paid therefor, the amount of month-

ly installments, the number of months over which payments are to be made, and the number of dollars paid to apply on purchase price. At the bottom of the blank is the following: "Representative taking this order has no authority to promise or make any agreement not contained in this order."

From this language we imply that the representatives had authority to bind the corporation with respect to any "agreement" contained in the order. The acceptance of the order by the corporation is evidenced by the signature of the bonded representative. The consideration, however, parted with by Mrs. Jackson was not $687.50 in cash, but only $55 in cash and a savings certificate of the National Building & Loan Association of America of the face value of $632.50 and a cash surrender value of $359.50. Mrs. O'Neill paid $90 in cash and assigned a similar certificate of the face value of $832.25 and a cash surrender value of $567.25. Under the circumstances disclosed by the evidence we would have but little difficulty in concluding that the representatives of the corporation had authority to make such contracts for a cash consideration. A more serious question, however, is whether the representatives were acting within their authority in making contracts such as these where part of the consideration consisted of certificates of another corporation. The printed order does not contain any reservation that it shall not be effective until accepted by the corporation at its home office. Such a provision is usually found in applications procured by agents where the principal desires to reserve to himself the right to accept or reject any offer made. There is nothing in the letters from the secretary of the corporation addressed to interveners to indicate that they are acceptances by the corporation of offers which were not effective as binding contracts without such acceptance. The whole tenor and effect of such letters is merely the recognition of contracts already made and compliance with their terms by the sending of passbookes and copies of bonds. If the agents had exceeded their authority in accepting the

certificates as cash, these letters serve at least as a ratification of such authority and would bind the corporation. Such action is equivalent to prior authorization. 21 R. C. L. 922. "By implication the authority of an agent is enlarged when the principal permits him to do acts not expressly authorized or which are recognized as valid after they have been done." 21 R. C. L. 855.

The finding that the contracts were valid and binding without acceptance by the corporation at its home office is strengthened by the fact that W. R. Beckstead, the president and general manager of the corporation, was in Nevada at the time these negotiations were had and actually signed the contract with Mrs. O'Neill and knew of the execution of the contract with Mrs. Jackson and acquiesced therein. No contention is made that action by the board of directors was necessary to afford acceptance of the offer of the purchasers. The contracts had the acquiescence and approval of the president and general manager. He would undoubtedly be the officer of the corporation who could accept or reject the offers if acceptance at the home office had been necessary. There was a meeting of minds of the purchasers and authorized representatives of the corporation at the time the purported contracts were executed at Ely, Nev., resulting in completed executory contracts. Such contracts were recognized and acted upon by the corporation as indicated by the letters from the secretary.

We conclude, therefore, that these contracts were made in Nevada and were not subject to the provisions of Laws Utah 1925, c. 87, § 18.

Appellants contend that even had these contracts been made in Nevada, their validity must be determined by the laws of Utah because they were to be performed in this state. There is nothing definitely stated in the contracts with regard to the place of performance or that the bonds would be delivered in Utah. Presumably the installment payments would be made to the home office and the bonds when paid for would be delivered to the purchasers in Ne-

vada. There was no evidence of an intent to contract with reference to the laws of any jurisdiction in which a particular act involved in the performance of the contract is illegal. Nor is anything else shown by the record to take this case out of the general rule stated in C. J. as follows:

"The validity of the contract, that is, the question whether the contract is a legal or an illegal one, is judged by the law on the subject in the state or country in which the contract is entered into, the general rule being that a contract good where made is good everywhere, and that a contract invalid where made is invalid everywhere. Exceptions to this rule are recognized where the parties clearly appear to have contracted with reference to the law of another jurisdiction, this being particularly true as to matters relating to performance, or where the contract is to be performed in another jurisdiction. There are, however, decisions to the contrary, that is, to the effect that, no matter where the contract is to be performed, its legality must be determined by the law of the place of making; and it has been held that, where a contract is declared void by the law of the state or country where it is made, it cannot be enforced as a valid contract in any other, although by its terms it was to have been performed there." 13 C. J. 253.

The judgment of the district court of Salt Lake County is affirmed, with costs to respondent United States Bond & Finance Corporation against appellants.

CHERRY, C. J., and ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

STRAUP, J., dissents.

### On Petition for Rehearing.
Decided December 29, 1932.  (17 P. [2d] 238.)

1. LICENSES. Generally, place of performance of contract for sale of bonds is place of business of obligator, where contract is silent on place of delivery (Comp. Laws 1917, § 5152).

2. COURTS. Statute can have no extraterritorial effect.

3. LICENSES. Act regulating sale of securities is applicable only to offers to sell and sales made within state, and is inapplicable to contracts made and executed in another state (Laws 1925, c. 87, §§ 2, 7, 10, 18).

STRAUP, J., dissenting.

On petition for rehearing.

PETITION DENIED.

(For former opinion, see 80 U. 62, 12 P. [2d] 758.)

FOLLAND, J.

The motion for rehearing, filed by appellants, urges several grounds of alleged error in the opinion as written. Appellants are here seeking to avoid their contracts for the purchase of bonds from respondent on the alleged ground that their contracts were made at Salt Lake City, Utah, and that respondent did not have any permit or license from the securities commission of the state of Utah authorizing it to sell or offer for sale such securities in the state of Utah. The case was ruled on the theory that the contracts in question were made and fully executed in the state of Nevada and were for that reason beyond the reach of the Utah statute. We are satisfied with that disposition of the case.

It is urged that this court erred "in holding and deciding that the contracts in suit were not to be performed in the State of Utah." The writer of the opinion misspoke himself in stating "presumably the installment payments would be made to the home office and the bonds when paid for would be delivered to the purchasers in Nevada." The place of performance is the place of business of the obligor where, as here, that contract is silent on the subject of where the bonds are to be delivered. The rule is stated in 13 C. J. 582 as follows: "In general, with regard to contracts for delivery of specific articles, the usual residence and place of business of the obligor is the place of performance, where no place is expressed."

Our statute, Comp. Laws Utah 1917, § 5152 (Uniform Sales Act), adheres to the general rule as follows: "Apart from any such contract, express or implied, or usage of trade to the contrary, the place of delivery is the seller's place of business, if he has one, and if not, his residence."

It does not follow, however, that the case is not rightfully decided, even though the bonds are in future to be delivered at the seller's office in Utah. It is fundamental that a statute can have no extraterritorial effect. A reading of our Sale of Securities Act, Laws of Utah 1925,

chap. 87, indicates a legislative intent to make its provisions applicable only to offers to sell and sales made within the state of Utah. By its definition of terms and requirement for license and registration it applies to a dealer "who in this State engages * * * in the business of selling any securities," a salesman who is authorized "to sell securities in any manner in this State." Section 2. "No dealer or salesman shall engage in business in this State as such dealer or salesman" (Section 10) unless registered. Securities are required to be registered "before being sold in this State" and applications for registration may be made by the issuer of securities or a registered dealer desiring "to sell the same within this State." Section 7. It is only a "Sale or contract for sale made in violation * * * of this Act" (Section 18) which is voidable at the election of a purchaser. The evident purpose of the act is to afford some protection to the residents of the state by requiring that securities offered for sale or sold in the state be first approved by and registered with the state securities commission, and that sale of securities must be by licensed dealers and salesmen. *People v. Augustine*, 232 Mich. 29, 204 N. W. 747. The act has no application to a contract made and executed in another state. *Coral Gables Corp. v. Clay*, 153 Va. 554, 149 S. E. 519 Where the situation was reversed it has been held a contract solicited and made in a state where the statute requires registration, was a violation of such statute, even where the securities were issued and delivered in another state. *Hohn v. Peters* (Cal. Sup.) 14 P. (2d) 519; *Rhines v. Skinner Packing Co.*, 108 Neb. 105, 187 N. W. 874.

Motion for rehearing is denied.

CHERRY, C. J., and ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.

STRAUP, J.

On the record I still think the contract in its finality was a Utah and not a Nevada contract, and thus think a rehearing should be granted.