## MAYER v. RANKIN et al.

No. 5781. Decided December 31, 1936. (63 P. [2d] 611.)

194

**196**

*Allen T. Sanford* and *Chris Mathison,* both of Salt Lake City, for appellant.

*Hurd & Hurd,* of Salt Lake City, for respondents.

ELIAS HANSEN, Chief Justice.

Plaintiff prosecutes this appeal from a judgment dismissing his complaint in which was alleged six causes of action. Both of the defendants were served with summons. Defendant Rankin did not answer or otherwise plead to the complaint. He has not filed a brief on this appeal. The defendant Fidelity & Casualty Company of New York, hereinafter referred to as respondent, filed a special and general demurrer to each of the six causes of action set out in the complaint. The demurrers were sustained and leave granted to amend. Plaintiff filed an amended complaint, which, upon motion of the respondent, was stricken on the ground that the amended complaint did not cure the defects of the original complaint. Plaintiff failed to further plead whereupon the action was, by the court, dismissed. Plaintiff assigns as errors the order sustaining the demurrers to the complaint, the order striking the amended complaint, and the judgment dismissing the action.

At the threshold of this appeal we are confronted with respondent's motion to dismiss the same. The motion is bottomed on the claim that the action was not dismissed as to the defendant Rankin, and that therefore the judgment of dismissal is not a final judgment from which an appeal may be had. The judgment of dismissal states, among other matters, that "now, on motion of Hurd & Hurd, attorneys for defendant Fidelity & Casualty Com-

pany, no one appearing in opposition: It is ordered and adjudged that the said action be and the same is hereby dismissed." It will be observed that the judgment of dismissal is in no sense limited to respondent. By its plain language the entire action was dismissed. It is stated by counsel for respondent that the action was not dismissed upon their motion, but upon the motion of the attorneys for appellant, and that, therefore, appellant is precluded from prosecuting his appeal. The difficulty with respondent's claim that not it but appellant requested the dismissal of the action is that such claim is dehors the record. If the judgment appealed from was in fact entered upon appellant's motion, the lower court could, and, upon timely motion, should have made the record speak the truth. This court may not change the record made by the trial court. The judgment, in its present form, was final as to all parties thereto, and, as such, an appeal may be had therefrom. As a further reason why the appeal should be dismissed, respondent urges that the assignment of errors was not served on defendant Rankin. There is no merit to that contention even though it be assumed that such objection is available to respondent. The record shows that the assignment of errors was served upon J. A. Barclay who, according to affidavits filed in the cause, was authorized by defendant Rankin to accept such service for and on his behalf. The motion to dismiss the appeal is denied.

In the main, the allegations of each of the six causes of action are the same. Each cause is founded upon alleged fraud of the defendant Rankin in the sale of mining stock to one of plaintiff's assignors. Plaintiff seeks to hold the respondents liable on their bond which it, as surety, executed to enable Rankin to secure permission to do business as a dealer in securities pursuant to the provisions of Laws of Utah 1925, chap. 87, p. 188, as amended by Laws of Utah 1929, chap. 79, p. 140. The allegations of the original and amended complaints differ in a number of immaterial particulars which need not concern us. There are, however,

some differences in the two complaints which are deemed material and which will presently be discussed. The claimed errors in sustaining the demurrers to the original complaint and in striking the amended complaint involve a consideration of the same questions of law; that is to say, if the original complaint is fatally defective in the particulars urged, and none of such defects were cured by the amended complaint, then, and in such case, the appellant has no just cause to complain because the latter was stricken. To avoid prolixity, we shall dispose of the law questions presented in the light of the allegations of the amended complaint. The fraud alleged in plaintiff's first cause of action is:

"That on or about the 28th day of November, 1932, the defendant, Lester Rankin, devised a scheme to defraud the plaintiff's assignors hereinafter named, and others, by selling them stock issued by the Mineral Veins Coalition Mines Company at false and fictitious values; and the said defendant, for the purpose of carrying out said scheme, on or about the date aforesaid, secured an option to purchase, and did thereafter purchase, from said Mineral Veins Coalition Mines Company, 1,000,000 shares of its treasury stock. And the plaintiff is informed and believes, and therefore alleges the fact to be, that, for the same purpose, the said Lester Rankin, during the months of December, 1932, and January, 1933, purchased about 5,000 shares of the capital stock of said company at a price not exceeding 2½c per share.

"That on the 19th day of January, 1933, the defendant, Lester Rankin, proposed to sell to A. A. Miller 5,000 shares of the capital stock of said Mineral Veins Coalition Mines Company at the price of 15c per share. And the said Lester Rankin for the purpose of inducing said A. A. Miller to purchase said stock, and pursuant to the fraudulent scheme hereinabove alleged, stated and represented to said A. A. Miller, as follows:

"That said stock was the treasury stock of said Mineral Veins Coalition Mines Company, and that the same had been registered in the office of said State Securities Commission of this State; that on February 1, 1933 he was going to sell his said stock to a New York bank, and that the money was already in said bank to meet the payment for said stock.

"That said A. A. Miller believed and relied upon each and all of said statements and representations, and, induced thereby, he, on or about the 19th day of January, 1933 entered into a contract with said Lester Rankin to purchase, and he did actually purchase, 5,000 shares of

capital stock of said Mineral Veins Coalition Mines Company at the price of 15c per share; and thereupon, and pursuant to said contract, the said Lester Rankin transferred and delivered to said A. A. Miller 5,000 shares of said stock, and in consideration thereof said A. A. Miller paid to said Lester Rankin the sum of $750.00.

"That each and all of said statements and representations so as aforesaid made by the defendant, Lester Rankin, to said A. A. Miller, were false and were made for the purpose of defrauding said A. A. Miller of his money; and said Lester Rankin intended by such statements and representations to deceive said A. A. Miller, and to induce him to act otherwise than he would have acted but for such statements and representation. That said statements and representations were false in this:

"That said stock sold, and offered to be sold, by said Lester Rankin to said A. A. Miller was not the treasury stock of said Mineral Veins Coalition Mines Company, but his own stock; that said stock had not been registered in the office of the State Securities Commission of this State; that he, said Lester Rankin, was not going to sell said stock to a New York bank on February 1, 1933, or at any time, and the money for that purpose was not already, or at any time, in said bank, or elsewhere, to meet the payment for said stock."

Similar allegations are contained in each of the other five causes of action. In one of such other causes it is alleged that Rankin, contrary to the fact, stated that the stock was selling at 40 cents per share, and that the same was listed on the Chicago exchange, and was there selling at 50 cents per share. In two of the causes of action it is alleged that for the purpose of inducing plaintiff's assignor to purchase the stock Rankin falsely stated that he had actually entered into a contract for the sale of the stock at, in one case, for 50 cents per share, and in the other for 60 cents per share.

It is contended by respondent that the foregoing alleged facts, even if established by the evidence, are not sufficient to justify a rescission of the contract of sale. That contention cannot be maintained. *Wilson* v. *Guaranteed Securities Co.*, 82 Utah 224, 23 P. (2d) 921; *Campbell* v. *Home Bldg., etc., Co.*, 46 Utah 1, 148 P. 401. Respondent further contends that it is not liable on its bond to purchasers of securities who may have been defrauded by

Rankin. The bond which respondent executed and delivered to the securities commission of Utah provides:

"Know all men by these presents, that we Lester Rankin of Salt Lake City, State of Utah, as principal and the Fidelity & Casualty Company of New York, State of New York * * * as sureties, are, by this obligation held and firmly bound unto the State of Utah, in the sum of Five Thousand ($5,000.00) Dollars, good and lawful money of the United States of America, and for the payment of said sum of money and the faithful observance of this instrument in writing, the subscribers bind themselves, their successors and assigns forever.

"The conditions of this obligation are such that, whereas, the above bounden Lester Rankin desires to operate as a dealer pursuant to and upon compliance with the provisions of chapter 87, Session Laws of Utah, 1925, as amended by chapter 79, Laws of 1929;

"Now, therefore, this indenture witnesseth: That if the said Lester Rankin and all salesmen registered by him it shall in all respects comply with the provisions of said chapter 79, Laws of 1929, then this obligation is to be void, otherwise to remain in full force and effect."

Rankin was, at the times complained of, so it is alleged, a registered dealer in securities in Utah and the foregoing bond was given to enable him to become such. By the provisions of our Securities Act, known as the Blue Sky Law, a sale of stock made in violation thereof is voidable at the election of the purchaser at any time within two years from the date of sale, or contract of sale. Laws of Utah 1925, chap. 87, § 18, p. 188, as amended by Laws of Utah 1929, chap. 79, p. 140, § 18, now R. S. Utah 1933, 82-1-25. The act prohibits the sale within the state of any unregistered security not of the class exempted by the act unless sold in a transaction exempt under the act. Laws of Utah 1925, chap. 87, p. 177, § 5, now R. S. Utah 1933, 82-1-7. Respondent contends that no facts are alleged in the amended complaint to the effect that the transactions relied upon for recovery of the money paid for the mining stock do not fall within the exemptions provided for by the act. Laws of Utah 1925, chap. 87, p. 187, § 15, now R. S. Utah 1933, 82-1-22, provides that:

"It shall not be necessary to negative any of the exemptions or classifications in this chapter provided in any complaint, information

or indictment or in any writ or proceedings laid or brought under this chapter, and the burden of proof of any such exemption shall be upon the party claiming the benefit of such exemption or classification."

By the provisions just quoted plaintiff, even though otherwise required to negative exemptions, is relieved from the necessity of alleging facts showing that the stock and the sale thereof do not fall within the exemptions. In this connection it should also be observed that the act condemns not only the sale of unregistered securities which are required by the act to be registered, but also condemns as fraudulent practice sales of securities brought about by any false pretense, representation, or promise, and makes one guilty of a felony who shall engage in fraudulent practices as defined by the act. Laws of Utah 1925, chap. 87, pp. 188, 192, §§ 17 and 27, now R. S. Utah 1933, 82-1-24 and 82-1-36. But it is urged on behalf of respondent that the amended complaint is barren of any allegations that the sales of the stock were made by Rankin in his official capacity as a dealer. The act defines a dealer as meaning, "Every person, other than a salesman, who in this state engages, either for all or part of his time, directly or through an agent, in the business of selling any securities issued by another person, or of purchasing or otherwise acquiring such securities from another for the purpose of reselling them, or of offering them for sale to the public," etc. Laws of Utah 1929, chap. 79, pp. 127, 128, § 2, now R. S. Utah 1933, 82-1-4, subd. 4. It is alleged in the amended complaint that at the time complained of Rankin was "engaged in this state in the business of purchasing and otherwise acquiring securities from other persons for the purpose of reselling them and offering them for sale to the public of this state and elsewhere." That for the purpose of carrying out a scheme to defraud plaintiff's assignors and others by selling them stock issued by the Mineral Veins Coalition Mining Company at false and fictitious values defendant Rankin secured an option to purchase, and did thereafter purchase, from said Mineral Veins Coalition Mining Company one million shares of its treasury

stock; that he represented to plaintiff's assignors that the stock which he was selling was treasury stock. These allegations are sufficient to characterize the transaction complained of as having been made by Rankin while acting as a dealer within the meaning of the act. It is also suggested that the surety bond executed by respondent was for the sole benefit of the state of Utah and that respondent is not liable thereon to any one but the state. The adjudicated cases do not support, but are against such view. *Green* v. *Fidelity & Casualty Co.,* 261 Mich. 508, 246 N. W. 208, 209; *Hogberg* v. *Landfeld,* 99 Cal. App. 360, 278 P. 907; *Hyde* v. *Pierce & Co.,* 147 Or. 5, 31 P. (2d) 755; *Thomas* v. *Fidelity & Casualty Co.,* 258 Ky. 360, 80 S. W. (2d) 8; *Zapf* v. *Ridenour,* 198 Iowa 1006, 200 N. W. 618; 87 A. L. R. 145-150. In the case of *Green* v. *Fidelity & Casualty Co.,* supra, the bond provided:

"That if said principals and all of their salesmen in their employ, registered by them, shall faithfully comply with all provisions of said Act 220 of Public Acts of 1923, then this obligation shall be null and void, otherwise shall remain in full force and effect."

The condition of that bond followed the language of a statute of Michigan. The sole obligee named therein was the people of the state of Michigan. It was by the court held that the statute having authorized the commission to designate the form of the bond its failure to designate that the bond was for the use, benefit, and protection of purchasers of securities did not preclude such purchasers from maintaining an action on the bond. In that case the court quoted with approval from the syllabus of the case of *Chambers* v. *Cline,* 60 W. Va. 588, 55 S. E. 999, wherein it is said:

"Where a bond is given under the authority of a statute, that which is not expressed but should have been incorporated is included in the bond."

Our statute and the bond given in the instant case are substantially the same as the statute and bond involved in the case of *Green* v. *Fidelity & Casualty Company,* supra, Laws of Utah 1929, chap. 79, pp. 137, 138, § 10, now R. S.

Utah 1933, 82-1-15. While the other cases which we have cited in support of the view that defrauded purchasers of securities may maintain an action on a bond such as the one here in question are distinguishable from the instant case, still such cited cases lend support to that view. Our attention has not been called to a case holding to the contrary. The case of *American Surety Co.* v. *Steen,* 86 Okl. 252, 208 P. 212, cited by respondent is authority for the doctrine that when a bond is given for the sole benefit of the state no one else may maintain an action thereon. It is clear that our Security Act and the bond therein required are for the protection of purchasers of securities against fraud perpetrated in violation of the act and not solely for the protection of the state. Respondent must fail in its contention that the facts alleged in the complaint are insufficient to fasten liability on it for the alleged fraud of defendant Rankin in selling the mining stock if the same was sold in this state.

One of the principal questions which divide the parties is whether or not the causes of action set out in the amended complaint are assignable. Appellant contends that they are; respondent that they are not. The court below held with respondent. The order striking the amended complaint was apparently founded upon the view that none of the causes of action involved in this litigation may be assigned, and that therefore both the original and the amended complaint are so fatally defective as not to admit of such an amendment as will enable the present plaintiff to maintain an action for the redress of the wrongs complained of. There is a lack of uniformity in the decisions as to the assignability of certain causes of action. Some of the apparent conflict has been brought about by statutory enactment changing the common law. However, the diversity of opinion may not all be attributed to such changes. The trend of judicial opinion has been to enlarge rather than to restrict the causes that may be assigned. In the absence of a statute, it is still generally, if not uniformly, held that where an injury is to the person for libel, slander, assault, assault

and battery, false imprisonment, for the recovery of a penalty, etc., the action is not assignable. The rule of nonassignability no longer extends to all actions arising ex delicto. This court in a number of cases has had occasion to consider the question of assignability of causes of action. In the case of *Wines* v. *Rio Grande Western Ry. Co.*, 9 Utah 228, 33 P. 1042, it was held that an action for the negligent killing of stock is assignable and that the assignee of such an action may maintain the same notwithstanding the assignment was made solely for the purpose of prosecuting the action. To the same effect is the holding in the case of *National Union Fire Ins. Co.* v. *Denver & R. G. R. Co.*, 44 Utah 26, 137 P. 653. In the case of *Lawler* v. *Jennings*, 18 Utah 35, 55 P. 60, it was held that an action for money overpaid by mutual mistake is assignable. In the case of *Brown* v. *Wightman*, 47 Utah 31, 151 P. 366, L. R. A. 1916A, 1140, it was held that a cause of action for malicious personal injury abates on the death of the wrongdoer. In the case of *Baglin* v. *Earl-Eagle Min. Co.*, 54 Utah 572, 184 P. 190, it is held that an assignee who acquires legal title to mining stock for the sole purpose of selling the same for the use and benefit of his assignor may maintain an action against the mining company for the conversion thereof because of its unwarranted refusal to transfer the same. In the case of *White* v. *Texas Co.*, 59 Utah 180, 202 P. 826, 830, one of the questions presented for determination was whether or not an assignee of stockholders who had been fraudulently induced to sell stock could maintain an action for the return of the stock. In the course of the opinion this court said:

"If plaintiff's complaint * * * is properly grounded in fraud—and we think it is—then the sales were not bona fide. * * * If the rescissions took place as alleged in the complaint, the effects were to reinvest the plaintiff and his assignors with their rights of ownership in the stock. Plaintiff's assignors thereupon assigned their stock to him as they would have a perfect right to do as a matter of course."

It is alleged in the amended complaint that the contracts of sale here brought in question were rescinded before the

assignments of the causes of action were made to plaintiff. When, as is held in the case of *White* v. *Texas Company,* supra, an action to recover stock which has been secured by fraud may be assigned then by the same token an action to recover money secured by fraud may be assigned. So, also, if as held in the case of *Lawler* v. *Jennings,* supra, an action for money paid by mistake may be assigned, there is no good reason why an action for the recovery of money secured by fraud is not likewise assignable when, as here, the defrauded party has rescinded the contract before the assignment is made. In each of such cases the essence of the action is one for money had and received. 41 C. J. 46. The means employed by the wrongdoer in securing the money rightly belonging to another is a mere incident. The nature of the right or title of the true owner to the money is the same in each case notwithstanding the proofs necessary to establish that right or title may differ. If the defrauded party had not rescinded the contract before making the assignments, the result might well be different. While the mere right to rescind is not a marketable commodity, a right to property held by another survives and may be assigned. While a mere naked right to recover for fraud is not assignable, still, by what we conceive to be the weight of authority and bottomed on sound legal principles, an assignment is upheld when it carries with it a subsisting substantial right to property independent of the right to sue for fraud. Such distinction was apparently recognized and followed by this court in the case of *White* v. *Texas Company et al.,* supra. Among the leading cases from other jurisdictions which recognize the distinction are: *Warner* v. *Flack,* 278 Ill. 303, 116 N. E. 197, 2 A. L. R. 423; *Emmons* v. *Barton,* 109 Cal. 662, 42 P. 303; *Traer* v. *Clews,* 115 U. S. 528, 6 S. Ct. 155, 29 L. Ed. 467; *Wright* v. *Hardy,* 76 Miss. 524, 24 So. 697; *Connecticut Mutual Life Ins. Co.* v. *Smith,* 117 Mo. 261, 22 S. W. 623, 38 Am. St. Rep. 656; *Wimpfheimer* v. *Perrine,* 61 N. J. Eq. 126, 47 A. 769; *National Valley Bank* v. *Hancock,* 100 Va. 101, 40 S. E. 611, 57 L. R. A. 728, 93 Am. St. Rep. 933.

It is the contention of respondent that the causes of action alleged in the original complaint were in the nature of suits in equity for the rescission of contracts of sale and therefore this action falls under the general rule that a suit in equity for the rescission of contract may not be as- signed. Some of the allegations indicate that such was the theory of the pleader when he drew the original complaint. Thus, while it is alleged in the original complaint that plaintiff's assignors notified Rankin of rescission of the contract of sale, it does not appear that such notices were given before the assignments were made. It is also alleged in the original causes of action that the stock in question was transferred to plaintiff. Part of the relief prayed for was that the contracts be rescinded. In the amended complaint, it is alleged that the contracts of sale were rescinded and the surrender of the stock tendered to Rankin before the assignments were made; that ever since such tender plaintiff and his assignors have kept the same good and now brings the stock into court to be delivered to Rankin; that the causes of action for the money paid for the stock was, before the commencement of the action, assigned to plaintiff. The prayer for judgment in the amended complaint is merely for the money paid for the stock together with interest thereon. Thus, while there is some uncertainty about the nature of the cause of action sought to be alleged in the original complaint, the allegations of the amended complaint are clearly to the effect that the causes of action assigned to plaintiff are merely for the return of the money paid to Rankin for the stock. Such causes of action are assignable. The court below was in error in holding to the contrary.

Both the original and the amended complaints are devoid of any allegation that the contracts of sale or any of them, were consummated within this state. In the absence of such allegation, the complaints, and the various causes of action therein set out, are fatally defective. *United* *States Bond & Finance Corporation* v. *National Building & Loan Ass'n of America,* 80 Utah 62, 12 P. (2d) 758,

rehearing denied 80 Utah 70, 17 P. (2d) 238. Appellant does not contend the law to be otherwise, but he does urge that such defect is a technical one which was not raised in the court below and therefore this court should disregard the same. The case of *Windram* v. *French,* 151 Mass. 547, 24 N. E. 914, 8 L. R. A. 750, is cited in support of that contention. The holding in that case does not materially aid appellant. Unless plaintiff's allegation brings him causes of action within the provisions of the Security Act (Rev. St. 1933, 82-1-1 et seq.), he must fail in his action against respondent. The absence of an allegation vital to a cause of action may not be viewed as a mere technical omission. The contracts of sale may or may not have been entered into in this state. If they were entered into without the state, respondent is not liable. Nor does the fact, if it be a fact, that respondent failed to argue a fatal defect in the court below preclude it from urging such defect in this court. *Neilson* v. *San Pete County,* 40 Utah 560, 123 P. 334; *Burningham* v. *Burke,* 67 Utah 90, 245 P. 977, 46 A. L. R. 466. The general demurrers of respondent to plaintiff's original complaint were properly sustained because it is not alleged therein that the sales contracts were executed in Utah. The amended complaint is vulnerable to the same objection. The amended complaint, however, alleges sufficient facts to support a judgment against the defendant Rankin independent of the Security Act. It was clearly error to strike the amended complaint, and, likewise, to dismiss the action as to Rankin. This cause must therefore be remanded to the district court of Salt Lake county for further proceedings. The respondent is a proper party to such proceedings, and even though respondent has been successful in sustaining the court's ruling with respect to the demurrers, no good purpose would be served by dismissing the action as to it, when, as here, it could again be made a party to the action.

From what has been said, it follows that the judgment of dismissal should be, and the same is, reversed. This cause is remanded to the district court of Salt Lake county with

directions to reinstate the cause and permit plaintiff, if he be so advised, to amend his complaint, and for such other and further proceedings not inconsistent with the views herein expressed as may be proper. No costs will be allowed either party on this appeal.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

It appears from the record (minute order, June 8, 1935) that the action was dismissed on motion of counsel for respondent casualty company. But this motion as recited by the minute order perhaps should be taken as no broader than the prayer contained in the demurrers of the casualty company to the complaint and amended complaint, which read that "each of the alleged causes of action therein contained, be dismissed as to this defendant." This being so up to June 8, 1935, the record does not speak that the cause against Rankin was dismissed on motion of respondent. On December 8, 1935, written orders "sustaining motion to strike amended complaint" and "sustaining demurrer" with "leave to amend the complaint" (which latter must be considered as pertaining to the first complaint, for it would be inconsistent to strike the amended complaint and at the same time sustain a demurrer to it and give ten days to amend it) were signed and filed by the judge. On the same date a judgment of dismissal of the entire action was signed and filed. This judgment recites that it was on motion of the attorneys for the casualty company. Passing the fact that there appears to be an inconsistency in an order permitting ten days to amend and a judgment of dismissal of the action signed and all filed the same day, the judgment of dismissal recites that it was made on motion of counsel for respondents. Consequently, it cannot be said that the appellant appealed from a judgment of the court which he himself asked for. And I am not prepared at this time to say that if it were

shown that had he requested such judgment in pursuance of a ruling sustaining a demurrer to his complaint, that we would dismiss the appeal. We might construe such request as consistent with the desire to obtain the final judgment necessary to appeal from in order to have tested out the question of whether the order sustaining the demurrer was properly made. Otherwise, a defendant might rest content with an order sustaining a demurrer and refuse to ask for judgment of dismissal, and the plaintiff could never have the ruling sustaining the demurrer tested unless the court of its own motion entered the judgment of dismissal. For the reason that the record shows the entire action dismissed on motion of respondent, I concur in the opinion that the appeal should not be dismissed.

Another situation should be noted in passing. It is contended that since Rankin did not appear pro se or by attorney, the motion dismissing as to him was a nullity. If this is so, the judgment of dismissal as to the bonding company may not be final, according to the rule laid down in *Shurtz* v. *Thorley,* 90 Utah 381, 61 P. (2d) 1262, and the appeal should be dismissed for that reason. The answer is that erroneous as may be the judgment of dismissal as to Rankin it stands as a dismissal, the court having jurisdiction to dismiss. Non constat that the judgment was not final.

Now as to the substantive matters: Many troublesome questions strew the course of this litigation. I agree that the complaint sufficiently alleges that Rankin was a dealer in securities as defined by chapter 87, Laws of Utah 1925, as amended by chapter 79, Laws of Utah 1929 (now title 82, R. S. Utah 1933); also that the bond required him to comply with the provisions of this act and that compliance with the act required him to register the securities sold and not to commit any fraudulent practices as defined by what are now sections 82-1-24 and 82-1-36, R. S. 1933; that the complaint alleges he did not register the securities and that he did indulge in one of the fraudulent practices denounced by the act; that it is not necessary to negative the fact that the

securities sold belong to a class exempt by the act; that the bond was for the benefit not only of the state, but of persons defrauded or obtaining unregistered stock by a sale made or consummated in Utah.

On the question of assignability, the distinctions made by the cases appear to me to be very volatile and at times quite illogical. There was no difficulty under the common law, which held all actions for tort nonassignable, but when this mass doctrine was eaten into, it became honey-combed with illogical and somewhat contradictory distinctions. At first, it was said that actions ex delicto which constituted invasions of the person were not assignable; thus, slander, libel, assault, battery, false imprisonment, false arrest, personal injury were not assignable. The restriction on assignment of the right to collect a penalty may be grounded on public policy, but why an action for damages for fraud should not be assignable is not clear in view of the general breaking down of the old time distinction made between nonassignability of tort actions and assignability of contract actions. It is said that the fraud is an offense against the person, but this cannot be true. A fraud is not actionable at law unless it results in damages in the way of pecuniary loss. A breach of contract causing loss of profits or property might as equally affect the person in the sense that all loss of property personally affects the owner of it; but it is not an invasion of the person or of the attributes of person or personality. Yet it appears to be the law that actions for fraud are not assignable.

It also seems to be held that an action in equity to effect a rescission is not assignable, although if it accompanies an assignment of the property in reference to which the action lies, some courts hold it to be assignable. It is difficult to imagine a situation where a person would assign a mere disembodied right to rescind, keeping for himself the right to obtain the property, which rescission was sufficient to restore. But if the contract may be rescinded without the aid of equity so as to transmute it into a situation where the

defrauder holds the money paid by the purchaser as money had and received for the benefit of the said purchaser, his action so transmuted may be assigned. Apparently the distinction seems to come down to the matter of whether the purchaser may completely make delivery back to the seller of the thing he bought as part of the rescission. If, as a buyer, he requires the aid of a court of equity to obtain delivery or to complete the rescission, he cannot assign. This seems to run counter to the doctrine of mutuality. Thus, in the instant case, where the plaintiff could deliver an indorsed certificate of the stock which he was fraudulently induced to buy and thus put the seller in status quo, he could rescind without aid of equity, but in such a situation as we apparently had in *White* v. *Texas Company,* infra, where the seller rescinded, it would require equitable interposition to compel the fraudulent purchaser to deliver over an endorsed certificate. One would expect on some of the distinctions that such action was not assignable. And here again fictions are resorted to in order to get around the rule. Thus, where a seller claims fraud on the part of the buyer and rescinds, it is said the rights of ownership were reinvested in the seller and he could assign his rights in the stock. But it would require an equity action to consummate the reinvestment of such rights. *White* v. *Texas Company,* 59 Utah 180, 202 P. 826. In this case it was even held that if the sale was not bona fide, "no title to the stock passed to the defendants." The quoted part does not seem to me to properly state the law, for it must have been, at the most, only voidable.

I confess the subject is to me quite in a fog. I am unable to see why any action to regain property or obtain damages based on fraud, now that the original distinctions have been broken down, should not be assignable. I am unable to see on principle why one who assigns his claim against another should not convey with it every right on the part of that person to use all the mechanisms of law and equity to assert the rights which his assignor could have asserted. But, at

all events, it seems to be the law as stated in the opinion of the court that if the purchaser may tender back his stock, asserting rescission, and demand his money so as to restore the defendant to his former status without interposition of equity and he so does, that he transmutes the cause of action into one for money had and received for his benefit and can then assign this claim together with the cause of action. The amended complaint alleges these steps. It alleges that the claim and cause of action were assigned. The complaint lacked a material allegation in that it did not specify that the contract of sale was made or consummated in Utah. This was not urged in the court below. The plaintiff had no chance to amend and thus avoid the effect of a reversal on that ground by this court. While it is true that a defendant may show before this court any deficiency whenever the complaint fails to state a cause of action, even though not urged or pointed out in the lower court, this being one of the few exceptions to the general rule that grounds not presented in the lower court cannot here be presented, it is also true that when such defendant does reveal a deficiency not pointed out below, thus depriving plaintiff of a chance to rectify it then, he cannot complain if he is allowed no costs if he wins only upon such newly revealed grounds. For that reason, I concur in the order which gives the prevailing party in this appeal no costs.