# Staunton

## T. A. ADAMS v. W. L. SEYMOUR AND J. W. HILL.

September 6, 1950.

Record No. 3676.

Present, Hudgins, C. J., and Gregory, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Easley, Edmunds & Vaughan,* for the plaintiff in error.

*Don P. Bagwell,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Seymour and Hill, plaintiffs below, recovered a judgment against Adams for $1,500 damages for breach of covenants in a deed made by Adams to Seymour. Hill had an equitable interest in the conveyance.

Adams, the owner of a tract of 271 acres of land, conveyed to Hanlon and partners certain timber with removal rights on two parcels, described as Lot No. 1 and Lot No. 2, by deed dated August 2, 1945, and duly recorded.

Afterwards, by deed dated January 10, 1947, also recorded, Adams and wife conveyed the 271-acre tract to Seymour for a consideration of $4,000 cash, making no reference to the timber deed to Hanlon but conveying with covenant of general warranty and the additional covenants quoted below.

By deed of March 14, 1947, Seymour and wife conveyed the land to Wade for a consideration of $4,875, likewise making no reference to the timber deed, but conveying with covenants of general warranty, seizin in fee, right to convey, quiet possession, freedom from encumbrances and further assurances. Wade later sold part of the timber on the land to Gough, and while the latter was

in process of cutting and removing it, he was stopped by Hanlon. Seymour afterwards paid Hanlon and partners $1,500 in settlement of their claim and he and Hill then brought this suit against Adams.

At the trial, which was to the court without a jury, Adams filed a demurrer alleging that the timber deed did not constitute a breach of his warranty and that the plaintiffs' loss did not result from such breach. Upon its being overruled he filed special pleas, alleging mutual mistake and estoppel. On similar grounds he claims here that the judgment should be reversed. The substance of his claim is that the plaintiffs knew all about the timber deed; that it was not intended by either party that the timber should be conveyed to Seymour and, therefore, the timber deed did not constitute a breach of the covenants in his deed to Seymour. A further statement of the evidence is necessary to an understanding of the opposing contentions.

A year or more after the timber deed was made, Adams employed Seymour and Hill, who were land auctioneers, to sell the 271-acre tract at public auction. Prior to the auction Hill looked over the land with Adams, and Adams showed him where the timber had been cut and what he thought was left. Hill testified it did not look like much was left and that Adams told him he did not think any more would be cut. At Hill's suggestion Adams got from Hanlon this signed statement, dated November 21, 1946:

"This is to certify that we have cut all the timber that was deeded to me by Theo. A. Adams in deed dated August 2, 1945, and known as Lot Number 2, or all that portion that was due me on the northwest side of the creek."

This was read at the auction, which was held next day, and it was then stated "that we didn't think that there would be any more timber cut." The attempted auction did not produce an offer of the minimum sale price of $4,878, fixed by Adams, and no sale was made.

Adams then proposed to sell the property to Seymour and Hill and after some days of bargaining they bought

it for $4,000, paying $200 down, for which Adams executed a receipt dated December 19, 1946, providing that the balance would be paid in cash on delivery of a deed with general warranty of title. Thereafter the deed of January 10, 1947, was made containing the covenant of general warranty and these additional covenants:

"The aforesaid grantors covenant that they are seized in fee simple of the realty hereby conveyed and have the right and power to convey the same in fee simple to the said grantee; that the said grantee shall have quiet and peaceful possession thereof free from eviction or disturbance; that the realty hereby granted is unencumbered; and that they, the said grantors, will execute all such other and further assurances of the said land and the title thereof as may be requisite."

Seymour and Hill both testified that at the time they bought, on December 19, Adams assured them that no more timber would be cut and they purchased in reliance on that assurance and on the covenants in their deed. Adams denied that any such assurance was given. Seymour testified that Adams gave him his deed and told him to have Adams' attorney prepare the deed to Seymour from it. After it was prepared Adams executed it at the attorney's office, took it home where his wife executed it, and two or three days later he delivered it to Seymour. He testified that he did not read a word of the deed before delivering it and knew nothing about the covenants it contained.

When Wade bought, he employed McKinney, an attorney, to examine the title. McKinney discovered the timber deed and called Seymour about it. Seymour stated that the matter was all cleared up and there would be no more timber cut. Seymour produced the Hanlon statement, quoted above, and upon that and Seymour's statement McKinney approved the title and Wade accepted the deed from Seymour containing the same covenants as Adams made, noted above.

About a year after the sale to Wade, when Hanlon found

out that the timber Adams had conveyed to him and his partners was being cut by Wade's vendee and stopped the cutting, he, Wade and the latter's vendee came to see McKinney about it. McKinney testified that Seymour was not then available and something had to be done right away. It was agreed that Hanlon's claim would be settled for $1,500, whereupon Wade's vendee resumed cutting. McKinney later made demand on Seymour, telling him that Wade would take action if the claim wasn't paid. Seymour made demand on Adams and several conferences followed in an effort to compromise. Adams refused to pay or contribute and Seymour paid the $1,500 to Hanlon and partners on August 26, 1948.

Defendant's first contention is that the plaintiffs' damages did not result from a breach of any covenants in his deed, but resulted from the subsequent conveyance of the property by the plaintiffs to Wade with general warranty and the English covenants, notwithstanding their full knowledge of the condition of the title, and therefore they assumed responsibility for what followed. We find no substance in this point. Defendant's covenants were not so conditioned.

Defendant also asserts that his covenant against encumbrances was broken when made, because of the prior timber deed and that plaintiffs should have asserted their claim while they owned the land, citing *Jones* v. *Richmond*, 88 Va. 231, 13 S. E. 414. The covenant in that case was of general warranty, running with the land, not breached until eviction, actual or constructive, and the holding was that the action thereon could not be maintained by one who had parted with the title. It is not in point here.

Here defendant's deed included a covenant of quiet possession free from encumbrances. He thereby promised that the plaintiffs might hold and enjoy the land free from any interruption, claim or demand by anybody, and that he would indemnify and save them harmless against any and every charge or encumbrance. Code, 1950, sec.

55-72. That covenant was broken when made because of the existing timber deed, giving rise to a right of action when defendant refused to indemnify plaintiffs against the loss caused by it. The plaintiffs had a right to purchase this adverse claim at a fair value, which the evidence shows without dispute they did, and then to call upon the defendant for reimbursement. *Rosenberger* v. *Keller*, 33 Gratt. (74 Va.) 489, 493; Anno., 61 A. L. R. 10, at p. 105.

Defendant asserts that his covenant against encumbrances should not apply to the timber deed because the failure to except that deed from his conveyance was a mutual mistake. If it be assumed that such defense was available to him in an action at law on his covenant, the answer is that the evidence fails to establish his claim. The finding of the trial court, like the verdict of a jury, settles the conflicts in the evidence in favor of the plaintiffs and cannot be disturbed if there is credible evidence sufficient to sustain it. *Tidewater Corp.* v. *McCormick*, 189 Va. 158, 167, 52 S. E. (2d) 61, 65; *Duncan* v. *Barbour*, 188 Va. 53, 55, 49 S. E. (2d) 260, 261; *Mauser* v. *Hebb*, 187 Va. 876, 879, 48 S. E. (2d) 257, 259.

Both plaintiffs testified flatly that they accepted defendant's deed relying on his assurance that the timber matter had been settled and that no more timber would be cut, together with his covenants that he was seized in fee simple and that there were no encumbrances. They testified they would not have bought the property without these assurances and would not have accepted the deed had it been written any other way. Adams did not deny their testimony that at the auction sale it was publicly stated, repeating what Adams had previously told the plaintiffs, that it was thought no more timber would be cut. Adams did not claim that he had any understanding with the plaintiffs that the uncut timber was to be reserved. He admitted that it was never mentioned except, he said, that when he gave Seymour his deed to have the deed to Seymour prepared he told Seymour it did not have the timber deed in

it, and that was all that was said. Seymour denied that this much was said. If it was, it was all the more strange that after his attorney prepared and delivered the deed to him he would have kept it two or three days without ever looking to see what he was conveying and what obligations he was assuming. It was his duty to read it and he is bound by its provisions to the same extent as if he had done so. *Coral Gables Corp.* v. *Clay*, 153 Va. 554, 149 S. E. 519; 26 C. J. S., Deeds, sec. 54, p. 261; 19 Am. Jur., Estoppel, sec. 71, p. 702.

The evidence as we must view it shows only that the plaintiffs had both constructive and actual knowledge of the timber deed. That alone was not a sufficient defense to the suit on the covenant against encumbrances. A grantee may rely for protection on the covenants in his deed, even though he had constructive or actual notice of encumbrances. Knowledge of the existence of an outstanding encumbrance may be the very reason for insisting on a covenant againt it. *Bossieux* v. *Shapiro*, 154 Va. 255, 261, 153 S. E. 667, 668; *Scott* v. *Albemarle Horse Show*, 128 Va. 517, 537, 104 S. E. 842, 848; *Olcott* v. *Southworth*, 115 Vt. 421, 63 A. (2d) 189; *Miller* v. *Schwinn*, 113 F. (2d) 748; *Thackston* v. *Farm Bureau Lbr. Corp.*, 212 Ark. 47, 204 S. W. (2d) 897; *Browne* v. *Taylor*, 115 Tenn. 1, 88 S. W. 933, 112 Am. St. Rep. 811, 4 L. R. A. (N. S.) 309, and Anno. at p. 310; *Lavey* v. *Graessle*, 245 Mich. 681, 224 N. W. 436, 64 A. L. R. 1477, and Anno. at p. 1479; 21 C. J. S., Covenants, sec. 39, p. 909; 14 Am. Jur., Covenants, etc., sec. 100, p. 547.

Moreover, parol evidence was not admissible to prove that the deed, which on its face conveyed the timber, was not intended to convey it; or that this encumbrance was intended to be excepted from the general terms of the covenants in the deed. *Spurr* v. *Andrew*, 6 Allen (88 Mass.) 420.

In *Scott* v. *Albemarle Horse Show, supra*, the horse show association covenanted to convey the land bought by

Scott "with general warranty and covenants of title." The deed tendered contained building restrictions which Scott claimed violated the covenants. The association insisted that Scott had full knowledge of these restrictions and hence the covenants had no application to them. It was held that "parol evidence was not admissible to prove an implied waiver, made at the time the contract was entered into, in conflict with the express provision of the written contract." 128 Va. at p. 537, 104 S. E. at p. 848. It was said that the subject matter of the contract and the terms of purchase are best gathered from the written contract of the parties, which is the sole repository of their agreement, and cannot be varied, altered, or contradicted by parol evidence of any prior or contemporaneous oral waiver or agreement.

The opinion noted the exception of a public highway from this rule, as established in *Jordan* v. *Eve*, 31 Gratt. (72 Va.) 1 (see also, *Deacons* v. *Doyle*, 75 Va. 258; *Trice* v. *Kayton*, 84 Va. 217, 4 S. E. 377, 10 Am. St. Rep. 836), but added: "We have gone no further than to hold that easements which are open, obvious and physical encumbrances upon the property are not within covenants against encumbrances;" and that even this proposition has not met with universal approval. 128 Va. at p. 531, 104 S. E. at p. 846. See also, 32 C. J. S., Evidence, sec. 960, p. 903; 20 Am. Jur., Evidence, sec. 1099, p. 958; 55 Am. Jur., Vendor and Purchaser, sec. 331, p. 761; Anno., L. R. A. 1916E, at p. 221.

■ Defendant argues that parol evidence was admissible to show the true consideration for the deed and if the consideration did not cover the timber then plaintiffs could not recover more than nominal damages. The first answer to this is that the evidence does not support it. As we have pointed out, the evidence, as the trial court had a right to view it, was that the plaintiffs were assured no more timber was to be cut and they would not have bought the property at the price without that assurance.

Furthermore, parol evidence to prove consideration is not admissible if its real effect is to alter or contradict the terms of the deed. "While for some purposes it is competent to show what the real consideration of a deed is, a party cannot, under the guise of showing what the consideration is, prove an oral agreement, either antecedent to or contemporaneous with the deed, which will cut down or vary the stipulations of his written covenant. This would violate the well-settled rule of law which will not permit a written contract to be varied or controlled by such testimony." *Williams* v. *Johnson's Estate*, 177 Mich. 500, 143 N. W. 627, L. R. A. 1916 E, 217, at p. 221.

In *Trout* v. *Norfolk, etc., R. Co.*, 107 Va. 576, 59 S. E. 394, 17 L. R. A. (N. S.) 702, the deed stated a money consideration paid in cash and the plaintiff attempted to prove that the real consideration for the conveyance was not only the sum of money but an agreement by defendant to provide for the plaintiff a certain passway over the land. This was objected to on the ground that it tended to alter and contradict the legal import of the deed. It was held that the evidence was inadmissible, being "for the purpose of setting up a prior contract between the parties different from that contained in the deed." 107 Va. at p. 582, 59 S. E. at pp. 396-7. It was stated that it is settled law that the consideration actually paid or promised can be shown to have been other than that recited in the instrument, "but it is equally as well settled that parol evidence is inadmissible to alter or contradict the legal import of a deed." 107 Va. at p. 582, 59 S. E. at p. 397.

It was pointed out that all previous or contemporaneous parol agreements or understandings between the parties materially altering or varying the written agreement must be considered as merged in that agreement. (See also, *Woodson* v. *Smith*, 128 Va. 652, 656, 104 S. E. 794, 795). Further, it was said, it is not to be questioned that a separate oral agreement as to any matter on which a contract is silent, and which is not inconsistent with its terms,

may be proved by parol, if it may be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. " 'But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing.' " (Quoting from *Seitz* v. *Brewers' Refrigerating Machine Co.*, 141 U. S. 510, 12 S. Ct. 46, 35 L. ed. 837). 107 Va. at p. 585, 59 S. E. at pp. 397-8.

*Sale* v. *Figg*, 164 Va. 402, 180 S. E. 173, relied on by defendant, was an instance of a collateral agreement, not contradictory of the terms or import of the written instrument, and hence provable by parol evidence.

Parol evidence varying the terms of a deed has been admitted in some jurisdictions on the ground that it was in explanation of the consideration. See Anno., L. R. A. 1916 E, *supra*, at p. 228. But the parol evidence rule is more rigidly adhered to in this State, *Conway* v. *American Nat. Bank*, 146 Va. 357, 362, 131 S. E. 803, 804; *Coal River Collieries* v. *Eureka Coal, etc., Co.*, 144 Va. 263, 283, 132 S. E. 337, 343, 46 A. L. R. 485; and, as indicated, is not to be relaxed to admit evidence to prove that a solemn written agreement does not mean what it says.

Finally, defendant argues that plaintiffs are estopped from asserting a claim against defendant on his covenant because they asserted none when they conveyed to Wade with knowledge that defendant's covenant had then been breached by the prior timber deed. No element of estoppel is discernible in that transaction. Plaintiffs had been assured, they said, that the timber deed was no longer of

moment, and relying on that and on defendant's covenants, they conveyed to Wade what defendant had conveyed to them, and with the same covenants. When they were required to make good on their covenants to Wade, they were entitled to hold defendant to his.

The judgment below is therefore

*Affirmed.*