432 So.2d 607 (1983)
GENERAL ELECTRIC CREDIT CORPORATION, Appellant,
v.
AIR FLOW INDUSTRIES, INC., Gene A. Latham and Jerry L. Latham, Appellees.
No. 82-1700.
District Court of Appeal of Florida, Third District.
May 24, 1983.
Rehearing Denied June 22, 1983.
Barnett & Kress and Robert Barnett, Miami, for appellant.
Weintraub, Weintraub, Seiden, Dudley & Press and Mark Press, Miami, for appellees.
*608 Before SCHWARTZ, C.J., and BARKDULL and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
Air Flow Industries, Inc. contracted to build a swimming pool for Mr. and Mrs. Heinlein, the payment for which was to be secured by a second mortgage. Before the contract was finalized, the appellant, General Electric Credit Corporation (GECC), which was financing some of Air Flow's operations, ran a title search on the customers' property with satisfactory results. The Heinleins then executed an installment sales agreement and a mortgage in favor of Air Flow which, for cash, assigned the mortgage and agreement, on a "non-recourse" basis, to GECC. When the Heinleins ceased making payments for their pool and GECC sought to foreclose the mortgage to recover the balance, the problem with which this case is concerned came to the surface. It seems that the Air Flow representative who prepared the mortgage itself mistakenly inserted an erroneous legal description of the property. As drafted, the mortgage described a parcel which did not exist. The foreclosure action, based as it was upon a totally ineffective instrument, Air Flow Heating and Air Conditioning, Inc. v. Baker, 326 So.2d 449 (Fla. 4th DCA 1976),[1] therefore suffered an ignominious demise.[2] GECC thereupon brought this action against Air Flow and its principals, the Lathams, who had individually guaranteed Air Flow's obligations, to recover the unpaid balance of the Heinleins' "secured" account.[3] A non-jury trial resulted in a judgment for Air Flow and the Lathams from which GECC has taken this appeal. We reverse.
In our view, Air Flow and its guarantors must be held liable to GECC, as a matter of law, for breaches of both express and implied undertakings that the mortgage it assigned was legally enforceable and effective. In the first place, the general financing agreement executed by Air Flow provides:
We hereby warrant with respect to each account[4] we sell to you hereunder that (a) it shall be genuine and shall represent a valid deferred payment obligation of a bona fide and competent buyer or lessee (hereinafter designated Buyer) for the amount then purporting to be owing thereunder, and the account and each guaranty submitted in connection therewith will be legally enforceable against each purported signatory thereof. [emphasis supplied]
The assignment of the Heinlein contract and mortgage likewise states that, with respect to those instruments,
the undersigned [Air Flow] warrants that ... (7) said instrument and all guarantees submitted in connection therewith are in all respects legally enforceable against each purported signatory thereof; ... (10) the undersigned has the right to assign said instrument and all documents and instruments related to the transaction it evidences, and thereby convey good title to it and to said property. [emphasis supplied]
These specific written provisions, plainly breached by the "mortgage" in question, simply mirror the otherwise existing rule that the assignment of a mortgage[5] carries with it an implied warranty *609 that it is what it purports to be: an existing valid, legal obligation enforceable against the property ostensibly secured. Carolina Housing and Mortgage Corp. v. Orange Hill A.M.E. Church, 230 S.C. 498, 97 S.E.2d 28 (1957); 59 C.J.S. Mortgages § 365 (1949); 9 G. Thompson, Law of Real Property § 4792 (repl. ed. 1958); 5 H. Tiffany, Law of Real Property § 1448 (1939); see also Littauer v. Goldman, 72 N.Y. 506, 28 Am.Rep. 171 (1878) (stating by-even-then-long-established rule that transferors of bills and notes impliedly warrant title). Moreover, these implied warranties are not affected  and the parties' agreement explicitly so provides with respect to the express ones[6]  by the fact that the assignment was made "without recourse." 6 Am.Jur.2d Assignments § 107 (1963). Such a provision indicates only that there is no guaranty that the debtor will actually pay the underlying obligation, and does not eliminate the representation that the mortgage or other security document is itself valid and effective. Wait v. Williams, 107 S.C. 32, 91 S.E. 969 (1917), quoted and followed in Carolina Housing and Mortgage Corp. v. Orange Hill A.M.E. Church, supra. Indisputably, the mortgage on nonexistent land was not what Air Flow both specifically and impliedly represented it to be and was therefore in breach of these representations. Florida Bank & Trust Co. of West Palm Beach v. Ocean & Lake Realty Co., 118 Fla. 695, 160 So. 1 (1935); Air Flow Heating and Air Conditioning, Inc. v. Baker, supra.
The appellees argue here, as they did with obvious success in the trial court, both that under an unwritten "understanding," GECC was to be responsible for preparing the legal documents, which it financed, and that, particularly because it had earlier run a title search on the property, it should have caught the misdescription before closing on the deal.[7] In reply, it is enough to say, in the most conclusory fashion, that neither of these considerations can affect in any way the defendants' liability as imposed upon them respectively by their express promises and by those which arose by operation of law. Southern Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771 (Fla. 1st DCA 1983) ("[A] custom cannot prevail over a legal right."); Rowell v. All, 352 So.2d 905 (Fla. 1st DCA 1977) (grantee may rely on grantor's warranty notwithstanding constructive awareness of contrary interest); Adams v. Seymour, 191 Va. 372, 61 S.E.2d 23 (1950) (grantee may rely on express covenant notwithstanding actual notice of encumbrances); Smiley v. Thomas, 220 Ark. 116, 246 S.W.2d 419 (1956) (same); City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448 (1947) (same).
For these reasons, the judgment is reversed with directions to enter judgment for the appellant against the appellees for the amounts claimed[8] plus attorneys' fees as provided both by the contract and the Lathams' personal guaranty.
Reversed and remanded.
NOTES
[1] Apparently, the appellee and its employees are not new to this principle or the practice of mis- or nondescription which presents it.
[2] To make matters worse, the Heinleins had by then sold the property to a bona fide purchaser, so that an action to reform the mortgage  which would otherwise have cured the problem  could not be pursued.
[3] See note 8, infra.
[4] Accounts are defined as including retail installment contracts, chattel mortgages, notes and "other choses in action."
[5] The UCC does not govern the legal consequences of the assignment of a real estate mortgage. Sec. 672.102, Fla. Stat. (1981) (Article 2 inapplicable); Sec. 673.104, Fla. Stat. (1981) (Article 3 inapplicable); Rucker v. State Exchange Bank, 355 So.2d 171 (Fla. 1st DCA 1970) (Article 9 inapplicable).
[6] See Florida Coast Bank of Broward County v. Monarch Dodge, Inc., 430 So.2d 607 (Fla. 4th DCA 1983).
[7] We are unaware of any principle under which such a claim, which amounts to one of contributory negligence, can serve as a defense to a breach of contract action like this.
[8] The controlling provision of the agreement states:

In the event of our breach of any one or more of the warranties herein set forth, we will upon demand repurchase the account then owned by you which is affected by such breach and will promptly pay you therefore the amount then remaining to be paid you by the Buyer thereunder less your unearned purchase charge thereon, but such obligation on our part shall not preclude you from enforcing at your election any other remedies available to you by reason of such breach. Upon any such payment by us, the applicable account shall be re-assigned by you to us without recourse of warranty.